[No. C056200. Third Dist. Nov. 25, 2008.]

DALE M. WALLIS, Plaintiff and Appellant, v.
PHL ASSOCIATES, INC., et al., Defendants and Respondents.

PHL ASSOCIATES, INC., et al., Cross-complainants and Respondents, v.
DALE M. WALLIS et al., Cross-defendants and Appellants;
JOANNA MENDOZA, Appellant.

Counsel

Mennemeier, Glassman & Stroud, Andrew W. Stroud and Kelcie M. Gosling for Plaintiff and Appellant, for Cross-defendants and Appellants and for Appellant.

Downey Brand, William R. Warne and Tory E. Griffin for Defendant and Respondent and for Cross-complainant and Respondent PHL Associates, Inc.

Klaus J. Kolb for Defendants and Respondents and for Cross-complainants and Respondents Jeffrey T. Wichmann and Mary B. Holmes.

## Opinion

**NICHOLSON, J.**—The trial court imposed sanctions of $43,678.42 against Attorney Joanna Mendoza and her clients (cross-defendants Dale M. Wallis, James Wallis, and Hygieia Biological Laboratories, Inc. (collectively, the Wallises)). They appeal, asserting the trial court abused its discretion. We affirm.

In the course of this long-running litigation, the parties agreed to a protective order, which the court issued, allowing the parties to file under seal certain confidential documents containing alleged trade secrets. Cross-complainant PHL Associates, Inc. (PHL), filed the declaration of its attorney, Tory E. Griffin, with attachments containing what PHL alleged were trade secrets. Although the declaration designated that it was filed under seal pursuant to the protective order and was sent to the trial court in a sealed envelope and labeled appropriately, the document later appeared in the court file available to the public.

Upon learning of the public availability of the declaration, Attorney Mendoza notified her clients of the public availability. In an attempt to defeat PHL's claim that the information attached to the declaration contained trade

secrets, the Wallises and Mendoza had third parties view and copy the declaration.

PHL, along with fellow cross-complainants Jeffrey T. Wichmann and Mary B. Holmes,[1] filed a motion for sanctions pursuant to Code of Civil Procedure section 128.5 (section 128.5) against the Wallises and Mendoza for their conduct relating to the declaration. The trial court granted the motion, finding that the actions of the Wallises and Mendoza were frivolous and taken in bad faith.

On appeal, the Wallises and Mendoza contend that the trial court abused its discretion because various circumstances showed that they believed the declaration was not entitled to the protection of the protective order and that the declaration did not contain trade secrets, all of which established that they did not act frivolously or in bad faith. They also contend that the sanctions order was premature because there has been, as yet, no determination that the information attached to the declaration constituted protectable trade secrets. We conclude that the contentions of the Wallises and Mendoza are without merit. The position of the Wallises and Mendoza, that the appearance of the declaration in the court's public file allowed them to disclose the information attached to the Griffin declaration, was frivolous. And they acted in bad faith when they disclosed the information.

## EVENTS LEADING TO SANCTIONS

### Background

This litigation dates back to 1994, when Dale Wallis, who had worked for PHL, sued PHL and other defendants for using a vaccine that she claimed to have invented for bovine mastitis. PHL cross-complained against Dale Wallis, James Wallis, and Hygieia Biological Laboratories for misappropriation of trade secrets. Attorney Joanna Mendoza represents the Wallises.

In 2000, a jury trial was conducted on the complaint only. The jury found in favor of Wallis. The cross-complaint remains untried.

In connection with the cross-complaint, PHL filed, in 2001, a notice designating trade secrets allegedly misappropriated by the Wallises, as required by Code of Civil Procedure former section 2019, subdivision (d)

---

[1] In this decision, there is generally no reason to distinguish among cross-complainants PHL Associates, Inc., Jeffrey T. Wichmann, and Mary B. Holmes. Therefore, we refer to the cross-complainants collectively as PHL.

(current Code Civ. Proc., § 2019.210). This filing, and the trial court's order finding the filing was adequate, allowed PHL to compel the Wallises to provide discovery concerning the alleged trade secrets.

In December 2005, the Wallises filed a motion asking the court to reconsider its holding that PHL's designation of alleged trade secrets was adequate. They based this motion for reconsideration on new case law. PHL filed documents connected with its opposition to this motion for reconsideration. Some of these documents were filed under seal pursuant to a protective order. The actions of the Wallises and Mendoza with respect to these documents filed under seal gave rise to the motion for sanctions. We therefore describe the protective order, recount the actions of the Wallises and Mendoza, and relate the proceedings leading to the sanctions order.

### The Protective Order

A protective order was in force at all times relevant to this appeal. Signed by the court on January 12, 1996, pursuant to the stipulation of the parties, the protective order defined the term "confidential information" as "any information . . . so designated by any party as to which uncontrolled disclosure may cause that party to disclose trade secrets, proprietary information or commercially sensitive matters."

The protective order allowed the parties to designate a document as confidential "by placing or affixing on each page of such document a legend" stating that the document is "CONFIDENTIAL MATERIAL" and subject to the protective order. Such identification required the party receiving the document to treat it as confidential and subject to the provisions of the protective order.

The order provided for filing of confidential documents: "All documents containing 'confidential' information that are filed with the Court in connection with any pretrial proceedings shall be filed in a sealed envelope or other appropriately sealed container on which shall be endorsed the title of this litigation, an indication of the nature of the contents of such sealed envelope or other container, the word 'CONFIDENTIAL,' and a statement [referring to the protective order]. [¶] Said envelope or container shall not be opened without further order of the Court or pursuant to the consent of the parties claiming confidentiality."

The protective order restricted the viewing of the confidential documents to "qualified person[s]," whom the order defined as the attorneys involved in

this litigation, legal professionals and witnesses in strictly controlled situations necessary to the proceedings, and the court and court personnel. The parties, as well as their spouses and employees, were explicitly excluded from the definition of "qualified person[s]."

If a party desired to dispute the status of a document designated as confidential (a process referred to by the parties as declassifying a document), the protective order allowed the party "to bring before the Court at any time the question of whether any particular document or information is confidential or whether its use should be restricted . . . ."

An amended protective order, substantially the same as the original protective order just described, was signed by the court on January 14, 2003, pursuant to the stipulation of the parties.

### PHL's Filing of Confidential Materials

On January 13, 2006, PHL filed the declaration of its attorney, Tory E. Griffin, in connection with PHL's opposition to the Wallises' motion for reconsideration. This document is the focus of this appeal. As do the parties, we will refer to this document as the Griffin declaration.

The caption of the Griffin declaration stated: "**DECLARATION OF TORY E. GRIFFIN, FILED UNDER SEAL IN SUPPORT OF OPPOSITION TO PLAINTIFF AND CROSS-DEFENDANTS' MOTION FOR RECONSIDERATION AND REQUEST FOR STAY.**" (Original capitalization & boldface.) Below the caption, the declaration stated: "This declaration and the supporting binder are sealed pursuant to the January 12, 1996 Order of the Court and contains confidential information filed in the [*sic*] Wallis v. PHL Associates, et al., No. 72352 by PHL and is not to be opened, nor shall its contents be displayed or revealed to any persons or their employees except by order of the Court pursuant to consent of the parties claiming confidentiality." At the bottom of each page of the two-page declaration, a footer stated: "Declaration of Tory E. Griffin In Support of Opposition to Motion for Reconsideration (Filed Under Seal)." More than 800 pages of documents containing formulas and other information were attached to the declaration.

The first document attached to the Griffin declaration was a reproduction of the document filed by PHL in 2001. The caption stated: "**IDENTIFICATION OF TRADE SECRETS.**" (Original capitalization & boldface.) The document identified what PHL alleged were the "trade secrets misappropriated by [the Wallises]." The remainder of the attachments documented the alleged trade secrets. Some of the individual pages (approximately 250) were

marked as confidential pursuant to the protective order, but many of the pages (approximately 550) were not so marked.

A legal secretary from Attorney Griffin's law firm placed the Griffin declaration and attachments in an extra-large envelope and sealed the envelope. On the outside of the envelope, she affixed a copy of the first page of the declaration, which indicated that it was filed under seal. She sent the envelope to the court along with a letter to the clerk specifying the documents to 'be filed and indicating that the Griffin declaration and attachments were to be filed under seal.

On the same day that PHL filed the Griffin declaration, it also filed a different, unsealed, declaration of Tory E. Griffin containing about 140 pages. Attorney Mendoza claimed that she received both declarations and accompanying materials in a single box. The box had tape around it and a "confidential" stamp.

Despite PHL's designation of the Griffin declaration as filed under seal and the use of a sealed envelope, the Griffin declaration and attachments were placed in the court's file, available to the public. The record on appeal contains no specific explanation for the appearance of the Griffin declaration and attachments in the public file.

### The Conduct of Attorney Mendoza and the Wallises

Attorney Mendoza discovered that the Griffin declaration was in the court file available to the public. She claims that she notified PHL of this problem.

On January 25, 2006, about two weeks after the filing of the Griffin declaration, Mendoza filed an opposition to a motion for terminating sanctions. In it, she claimed that PHL had threatened to violate the protective order and reveal trade secrets owned by Wallis. She charged that PHL's counsel had a "cavalier attitude regarding the need to maintain confidentiality of the documents in question and the severe prejudice that arises from such disclosures. *They [PHL's counsel] have put all of PHL's alleged trade secrets on display for the world to see in a publicly filed document that they failed to file in accordance with the requirements of the Protective Order. . . .*" (Italics added.) At the end of this argument, Mendoza wrote: "Under the circumstances, Wallis cannot trust opposing counsel to comply with the Protective Order or to keep any of the cross-defendants' trade secrets confidential as they are required to do. Once disclosed, their trade secret status is lost forever with irreparable harm. *If PHL ever had trade secrets, it does not anymore as a direct result of a huge violation of the Protective Order.* They cannot

protect their own clients' alleged trade secrets, and they certainly have less incentive to keep Wallis' information protected." (Italics added.)

Mendoza asserts on appeal that this statement in her points and authorities with respect to an unrelated motion was her way of telling PHL and its attorneys that the Griffin declaration was not under seal. In the hearing on the motion for sanctions, however, the discovery referee asked Mendoza whether she told PHL's counsel that the Griffin declaration was not under seal. She replied: "Thank God, no. Because frankly, if I had, my client could have sued me for malpractice."

Mendoza claims that, on February 1, 2006, she spoke to someone at the State Bar ethics hotline. In response to her inquiry concerning what she should do under the circumstances, the person at the ethics hotline told Mendoza that she had a "paramount" duty to her clients to tell them about the public availability of the alleged trade secrets and to advise her clients concerning the legal effect of the public availability on the status of the information as trade secrets. Mendoza had no duty to opposing counsel. Inadvertent disclosure of a trade secret is unlike inadvertent disclosure of information subject to the attorney-client privilege, which requires counsel who receives the inadvertent disclosure to protect the privileged information. (See *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 [82 Cal.Rptr.2d 799] [discussing duty of opposing counsel when attorney-client information inadvertently disclosed].)

After talking to the person at the ethics hotline, Mendoza talked to Dale Wallis and told her that the Griffin declaration, containing alleged trade secrets, was available publicly in the court's file. Dale Wallis conveyed that information to James Wallis.

Dale Wallis seized what she perceived to be an opportunity to defeat PHL's claim that the vaccine formulas contained in the Griffin declaration were trade secrets. She sent three people (Kathy Meredith, Jackie Huff, and Debra Fitzgerald, none a party to this action) to view the public file and take notes so that an argument could be made that those alleged trade secrets had been publicly disclosed. The three people viewed the file and later signed declarations that they had seen the Griffin declaration.

Dale Wallis also obtained the services of Capitol Couriers to make a copy of the Griffin declaration. The service created a compact disc (CD) with a digital copy of the Griffin declaration.

Responding to Dale Wallis's request, James Wallis asked his former girlfriend, Megan Evans, to go to the courthouse and view the Griffin

declaration. James Wallis also had Evans pick up the CD from Capitol Couriers. Later, when James Wallis learned that the issue of whether the protective order had been violated was being presented to the court, he instructed Evans to throw away the CD.

The Wallises had these third parties view or copy the Griffin declaration in an attempt to shield themselves from a lawsuit or other adverse consequences of having viewed the Griffin declaration themselves. Dale Wallis believed she was bound by the protective order and, therefore, her viewing of the Griffin declaration would not establish that they had been disclosed to the public, but she also believed that the viewing of the Griffin declaration by third parties would establish their public disclosure.

In a hearing on March 16, 2006, Mendoza stated that "[a]ll of [PHL's] trade secrets are sitting in Yolo County's file right now for the whole world to see . . . ." Counsel for PHL investigated and found that the Griffin declaration had not been maintained under seal. PHL asked the court to treat it as a sealed document.

On April 16, 2006, the trial court, on PHL's motion, ordered the clerk to place a seal around the Griffin declaration and, thus, to treat it as a sealed document until a full hearing could be held on the issue. The Wallises objected to the interim sealing of the Griffin declaration, and, on May 2, 2006, the trial court overruled the objection, stating that "a clerical error by either the court or counsel for PHL resulted in the public dissemination of a document that should have been filed under seal." The court left for later the ultimate question whether the Griffin declaration was entitled to remain sealed.

On May 3, 2006, Mendoza filed a declaration which stated, in part, that the Griffin declaration "has been seen on the Internet, although no one knows who posted the information." Acting on this information, PHL hired a computer consultant to search for the document on the Internet. After several days, PHL found the Griffin declaration in an Internet posting.

Before PHL found the Internet posting, counsel for PHL asked the discovery referee to order the Wallises to identify the Web site where the Griffin declaration was posted. Mendoza informed the referee that, although she had been told it was on the Internet, she did not know the Web site. She also could not tell who told her about the Internet posting because that information was subject to the attorney-client privilege. It later came to light, however, that James Wallis had e-mailed to both Dale Wallis and Mendoza the address of the Internet posting. Dale Wallis intentionally deleted the e-mail, thus making it unavailable to the court and PHL.

In a filing concerning whether the Griffin declaration was filed under seal, Mendoza wrote: "The documents and electronic version [CD] of [the Griffin declaration] were not retrieved from Capitol Couriers by Dr. [Dale] Wallis, but instead by another individual who has lawfully disseminated the information. [Citation to Mendoza's declaration.] [The Griffin declaration] has been seen on the internet, although neither Wallis nor counsel knows who posted the information."

After a hearing on the issue of whether the Griffin declaration should be maintained under seal in the court's file, the discovery referee recommended to the court that it issue an order (1) sealing the declaration and requiring the parties to treat the declaration as sealed and confidential pursuant to the protective order and (2) requiring the Wallises immediately to "return all copies of [the Griffin declaration] in their possession or in possession of their agents to [Mendoza]." The referee ascribed no fault or responsibility to "anyone involved in the filing of [the Griffin declaration]," and added: "Without resolving any merits issues the Referee would recommend that the Court find that it was the intent of the parties to have sealed [the Griffin declaration] . . . ." On October 24, 2006, the trial court adopted the referee's recommendations in full.

*The Sanctions Order*

PHL moved for sanctions against the Wallises and Mendoza pursuant to section 128.5, seeking an award of $43,534.50, the amount of attorney's fees incurred by PHL as a result of the actions of the Wallises and Mendoza relating to the Griffin declaration. The discovery referee appointed by the court heard arguments from the parties and then issued a report recommending that sanctions be imposed against the Wallises and Mendoza. The Wallises and Mendoza objected to the report and requested a hearing in the superior court. PHL responded to the objections, and the trial court adopted the referee's report without holding a hearing.

Applying section 128.5 because the action was filed before December 31, 1994 (see *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 812 [11 Cal.Rptr.3d 298, 86 P.3d 354] [§ 128.5 applies to actions initiated before 1995]), the court found that the Wallises and Mendoza violated the protective order and did so acting in bad faith. The Griffin declaration was entitled to the confidentiality protections of the protective order because (1) the "under seal" label in the title evinced an intent to file the document under seal, (2) the Wallises and Mendoza recognized the contents of the Griffin declaration as the alleged trade secrets that were the subject of the action, (3) Attorney Griffin simultaneously filed another declaration with exhibits that were not confidential, (4) the Wallises and Mendoza knew that Attorney

Griffin intended to file the declaration under seal, and (5) the Wallises and Mendoza knew that the presence of the Griffin declaration in the public file without a protective cover was inadvertent. The conduct of the Wallises and Mendoza belied their claim that they believed PHL had waived the confidentiality of the Griffin declaration, and their scheme of using third parties to attempt to secure a finding that PHL waived the alleged trade secrets further demonstrated bad faith.

The court concluded that the Wallises and Mendoza violated the amended protective order and were subject to sanctions for bad faith tactics based on the following actions:

(1) Mendoza informed her clients that the Griffin declaration was in the public file without a protective cover;

(2) the Wallises and Mendoza ignored the amended protective order's procedures for declassifying confidential documents;

(3) the Wallises sent four people to the courthouse to view the Griffin declaration;

(4) Dale Wallis had a copy service produce an electronic copy of the Griffin declaration;

(5) James Wallis viewed the Griffin declaration himself and, indirectly, through his friends;

(6) the Wallises and Mendoza obstructed the investigation;

(7) the Wallises and Mendoza directed the person who possessed the electronic copy of the Griffin declaration to destroy that evidence;

(8) Dale Wallis destroyed the e-mail showing that she and Mendoza received a link to the Web site where the Griffin declaration was posted; and

(9) the Wallises and Mendoza engaged in tactics that delayed the discovery of the Web site where the Griffin declaration was posted and increased PHL's costs.

Based on these findings, as well as evidence concerning the attorney's fees expended to uncover the bad faith tactics of the Wallises and Mendoza, the court awarded sanctions in favor of PHL ($24,538) and Wichmann and Holmes ($19,140.42), totaling $43,678.42. All sanctions are payable by the Wallises and Mendoza, jointly and severally.

## SECTION 128.5 AND STANDARD OF REVIEW

■ Section 128.5 gives the trial court discretion to award "reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." (*Id.*, subd. (a).) " 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party." (*Id.*, subd. (b)(2).) "Section 128.5 permits the trial court to impose sanctions under certain narrowly defined conditions. Sanctions are warranted only if the moving party meets its burden of proving that the opposing party's action or tactic was (1) totally and completely without merit, measured by the objective, 'reasonable attorney' standard, or (2) motivated solely by an intention to harass or cause unnecessary delay, measured by a subjective standard. [Citations.] Whether sanctions are warranted depends on an evaluation of all the circumstances surrounding the questioned action. [Citation.]" (*Weisman v. Bower* (1987) 193 Cal.App.3d 1231, 1236 [238 Cal.Rptr. 756], fn. omitted.)

"The award of sanctions for a frivolous action [or tactic] under Code of Civil Procedure section 128.5 is within the sound discretion of the trial court. [Citation.] Once imposed, '[the] test on appeal is whether the trial court has abused the broad discretion to justify our interference with a sanction award.' [Citation.] In reviewing that exercise of discretion we are informed by 'several policy guidelines: (a) an action that is simply without merit is not by itself sufficient to incur sanctions; (b) an action involving issues that are arguably correct, but extremely unlikely to prevail, should not incur sanctions; and (c) sanctions should be used sparingly in the clearest of cases to deter the most egregious conduct.' [Citation.]" (*Bach v. McNelis* (1989) 207 Cal.App.3d 852, 878–879 [255 Cal.Rptr. 232].) "In accordance with the usual rule on appeal, the judgment or order of the trial court is presumed correct. All intendments and presumptions are indulged to support it on matters to which the record is silent, and error must be affirmatively shown. [Citation.] Where the evidence is in conflict, the appellate court will not disturb the findings of the trial court. [Citation.]" (*Ellis v. Roshei Corp.* (1983) 143 Cal.App.3d 642, 645, fn. 2 [192 Cal.Rptr. 57].)

## DISCUSSION

### I

### *Attorney Mendoza's Actions*

Attorney Joanna Mendoza contends that the award of sanctions against her was an abuse of discretion because the undisputed evidence shows that she

acted in good faith with respect to the Griffin declaration. She asserts that four circumstances establish her good faith: (A) her reliance on PHL's practice of revealing trade secrets by filing them publicly, (B) the failure of PHL to protect its secrets, (C) her reliance on the law concerning keeping trade secrets, and (D) her reliance on the advice she got from the State Bar ethics hotline. Viewing the evidence under the applicable abuse of discretion standard, we conclude that Mendoza's contention fails. Her actions were frivolous and taken in bad faith, and her arguments fail to refute that conclusion.

## A. *Purported Reliance on PHL's Practice of Revealing Secrets*

PHL's cross-complaint alleges that the Wallises misappropriated some of its trade secrets. During the long course of this litigation, PHL concluded that some of the formulas that it had designated as trade secrets in the past were no longer trade secrets. Therefore, in filings in the trial court, PHL did not designate documents containing those formulas (four of them, according to Mendoza) as confidential under the protective order. In response to the Wallises' claim that PHL was violating the protective order, PHL stated that it was at liberty to reveal its own secrets. In a 2003 filing, PHL stated: "PHL has already pointed out that the protective order does not prohibit a party from disclosing its own trade secrets or confidential information. . . . Given the fact that the parties have been in litigation for more than ten years, it is not surprising that some information considered 'confidential' by PHL in 1996 or earlier is no longer considered 'confidential' by PHL today."

Mendoza claims she had every right to assume that PHL intended to waive the confidentiality of the Griffin declaration because PHL had previously waived the confidentiality of some of its trade secrets by including them in filings that were not under seal. Citing what Mendoza calls PHL's "policy of and practice of waiving confidentiality as to its purported trade secrets by filing them without benefit of sealing" (boldface & capitalization omitted), she contends that her conclusion that PHL was waiving the confidentiality of the Griffin declaration was reasonable. This contention is untenable because (1) the circumstances of the filing of the Griffin declaration and its appearance in the public file would not lead a reasonable attorney to believe that the protective order was inapplicable and (2) PHL's waiver of confidentiality in the past did not justify Mendoza's action with respect to the Griffin declaration.

### 1. *Griffin Declaration Filed Under Seal*

Despite Mendoza's claim that the Griffin declaration was not filed under seal, the totality of the circumstances surrounding the declaration made it

clear, and would have made it clear to any reasonable attorney, that the declaration was filed under seal. The cover of the Griffin declaration stated that it was filed under seal. It arrived in Mendoza's office in a box that was stamped "confidential." Many of the pages were marked with a notification that they were confidential under the protective order. Attorney Griffin filed a second, unsealed declaration on the same day containing matters that were not subject to the protective order.

Mendoza's asserted belief that the Griffin declaration was not filed under seal is not credible. As the trial court concluded, Mendoza recognized the contents of the Griffin declaration as the trade secrets that were the subject of the misappropriation action. She acted surreptitiously to have her clients or others, at the behest of her clients, view the contents of the Griffin declaration while they appeared unprotected in the court file in order to argue later that the trade secrets had been made public.

The minor deviations from the requirements of the protective order for a confidential filing did not make the protective order inapplicable to the Griffin declaration. PHL's counsel substantially complied with the protective order.

■ There appears to be no case law directly on point stating whether substantial compliance with the requirements of a protective order is sufficient to obtain the order's protection. However, the use of the substantial compliance doctrine in the analogous realm of compliance with statutes is well defined: "In general, substantial compliance is the governing test for determining whether statutory requirements have been met. [Citation.] Strict compliance is required only when the intent of the statute can only be served by such a test. [Citation.] 'Substantial compliance . . . means actual compliance in respect to the substance essential to every reasonable objective of the statute.' [Citation.]" (*National Parks & Conservation Assn. v. County of Riverside* (1996) 42 Cal.App.4th 1505, 1522 [50 Cal.Rptr.2d 339].)

Here, the reasonable objective of the protective order is to allow the parties to designate documents as confidential and prevent disclosure of the information in those documents. It was apparent to all that the Griffin declaration was intended to be confidential. The Griffin declaration was filed with the court with a front page clearly designating that the declaration was filed under seal. While not all pages were marked as confidential under the protective order, many were so marked. It contained the formulas over which the parties were litigating trade secret status. Denying PHL the protection of the protective order simply because it did not mark some of the pages as confidential would constitute an unreasonably strict application of the requirements of the protective order.

If Mendoza truly thought that the failure of PHL's counsel to conform to the protective order's requirements denied confidentiality to the Griffin declaration, her remedy was to bring the issue to the attention of the court and have the court make the determination. The protective order provided for that process.

### 2. *No Waiver of Confidentiality*

None of this changes by virtue of the fact that PHL may have waived the confidentiality or the trade secret status of some of its formulas in the past. When PHL waived the confidentiality of formulas in the past, it did so in unsealed filings. The Griffin declaration was filed under seal.

Mendoza's current argument that she relied on the prior waivers is both incredible and unreasonable. It is incredible because she acted surreptitiously to use the mistaken appearance of the declaration in the public file to attempt to defeat the claim that the information attached to the declaration included trade secrets. It is unreasonable because no reasonable attorney would have believed that prior waivers, made under different circumstances, justified her conclusion that the confidentiality of the alleged trade secrets attached to the Griffin declaration had been waived.

### B. *Reliance on PHL's Failure to Protect Its Secrets*

Mendoza argues that she reasonably relied on PHL's failure to protect its secrets after she notified PHL's counsel that the Griffin declaration was available in the public file. She claims that "[l]ess than two weeks after the Griffin declaration was filed, [she] told PHL that its attorney had just recently 'put all of PHL's alleged trade secrets on display for the world to see in a publicly filed document that they failed to file in accordance with the requirements of the protective order.' " We conclude that the trial court did not abuse its discretion in determining that this cryptic reference was insufficient to show good faith or to justify violating the protective order.

Mendoza's assertion that PHL publicly disclosed its trade secrets is a recurring theme in this litigation. She has argued since 2001 that PHL's alleged trade secrets are in the public domain. In 2003, Mendoza claimed to have personal knowledge of specific, yet unintentional, violations of the protective order. Again in 2005, Mendoza asserted that PHL had engaged in multiple violations of the protective order and, therefore, could not be trusted with trade secrets. In connection with the proceedings to seal the Griffin declaration after it had been placed in the public file, Mendoza stated that "the information at issue was never a valid trade secret. As has been argued by Wallis since September of 2001, *none* of the 800+ pages opened up to the

public the past few months contained trade secrets of PHL." (Original italics.) Mendoza's many statements prior to the filing of the Griffin declaration support PHL's assertion that Mendoza's comment in a memorandum of points and authorities soon after the filing of the Griffin declaration, stating that PHL had "put all of PHL's alleged trade secrets on display for the world to see," was not effective notice of the public availability of the Griffin declaration in the court file. Instead, the manner in which Mendoza gave "notice" to PHL of the situation was evidence that Mendoza sought to cover herself with a cryptic reference but did not intend at all to actually apprise PHL of the problem.

Accordingly, Mendoza's argument that she told PHL about the public availability of the Griffin declaration and PHL did nothing about it is unconvincing.

### C. *Purported Reliance on Law Concerning Trade Secrets*

Having failed to convince us that her violation of the protective order was not frivolous or done in bad faith, Mendoza, citing *Masonite Corp. v. County of Mendocino Air Quality Management Dist.* (1996) 42 Cal.App.4th 436 [49 Cal.Rptr.2d 639] (*Masonite*), contends that, under California law, the public availability of the Griffin declaration in the court's file defeated PHL's argument that the information attached to the declaration is entitled to trade secret protection. This argument is without merit for two reasons: (1) the sanctions order was for the violation of the protective order and the actions of the Wallises and Mendoza in obstructing the investigation into those violations, not for revealing trade secrets, and (2) *Masonite* is distinguishable on its facts and does not lend credibility to Mendoza's claim that she acted in good faith.

### 1. *Sanctions for Violation of Protective Order*

The trial court did not determine the validity of PHL's claim that the information attached to the Griffin declaration contained protected trade secrets. That determination, which is one of the main elements of PHL's misappropriation cause of action, was unnecessary to resolving PHL's motion for sanctions. The issue presented by the motion for sanctions was whether Mendoza acted frivolously and in bad faith by violating the protective order, regardless of whether PHL's formulas are eventually determined to be trade secrets. Therefore, even if, by application of *Masonite*, the alleged trade secrets attached to the Griffin declaration lost their secret status because they were revealed to the public in the court's file, Mendoza violated the protective order by informing her clients, directly, and others, indirectly, of the accessibility of the Griffin declaration with its attachments. The protective

order applied regardless of whether the attachments to the Griffin declaration actually contained trade secrets.

█ The protective order provided a procedure for challenging the status of a confidential filing. It allowed a party to seek to declassify a document by asking the court to determine that the document was not entitled to confidentiality. Mendoza made no attempt to follow this provision of the protective order, a fact supporting the determination that her actions were frivolous and taken in bad faith. Instead, she surreptitiously informed the Wallises of the unprotected materials with the intent to disclose the materials, which was a violation of the protective order. Therefore, Mendoza's argument, relying on *Masonite*, that the Griffin declaration no longer contained trade secrets because it was placed in the public file does not justify her actions with respect to the Griffin declaration.

### 2. *Masonite*

Even if *Masonite* is relevant to whether Mendoza acted properly or in good faith with respect to the Griffin declaration, that case does not lend support to Mendoza's arguments because it is distinguishable and does not reflect what happened in this case.

In *Masonite*, the owner of certain trade secrets included the trade secrets in a public filing without designating them as trade secrets. The *Masonite* court determined that "[o]nce the . . . information was revealed without trade secret designation, it became subject to public disclosure and was no longer privy only to those within the Masonite commercial concern." (*Masonite, supra,* 42 Cal.App.4th at p. 454.) Thus, the trade secrets publicly disclosed by the owner lost their status as trade secrets. (*Ibid.*) The *Masonite* court noted the distinction between trade secrets publicly disclosed by the owner of the trade secrets and other trade secrets that were disclosed by the public agency. The former lost their confidential status, while the latter did not. (*Ibid.*)

█ Within this context, the *Masonite* court stated: "Under California law, a trade secret exists as confidential material only when properly protected by the party seeking to assert the privilege. [Citations.] '[I]t must, as the term implies, be kept secret by the one who creates it. [Citation.]' [Citation.] Once the . . . information was submitted in the reports without trade secret designation, whether deliberately or inadvertently, it was a public record which the [public agency], and others, could disclose without restriction to the public generally. Lost was the essential character of the information as a trade secret." (*Masonite, supra,* 42 Cal.App.4th at p. 455.)

Here, PHL acted pursuant to the protective order to keep the trade secrets confidential. PHL did not cause the Griffin declaration to be placed in the

public file. Therefore, the documents attached to the Griffin declaration did not lose their character as trade secrets. There is nothing in *Masonite* to suggest that inadvertent disclosure by a third party negates confidentiality or results in a forfeiture of the privilege.

Given the facts of this case, any reasonable attorney, knowing what Mendoza knew, would at least have had to determine whether PHL, instead of the court, had caused the Griffin declaration to be placed in the public file. Any reasonable attorney, even after reading *Masonite*, would have believed that, to act in good faith, the proper course was to seek guidance from the trial court under the protective order as to the continued confidentiality of the Griffin declaration.

### D. *Purported Reliance on Ethics Hotline*

Mendoza contends that her telephone call to the State Bar ethics hotline shielded her from a finding that her actions were frivolous and taken in bad faith. She argues that she demonstrated her good faith by contacting the ethics hotline to discuss the ethical implications of the appearance of the Griffin declaration in the public file. We disagree. Mendoza's call to the ethics hotline did not shield her from sanctions.

In her declaration concerning the circumstances relating to her call to the ethics hotline, Mendoza stated that she called the hotline on January 30, 2006, and received a return call from the hotline on February 1, 2006. Mendoza declared that "after [she] described the events in detail leading up to the situation, the complexity of the matter and uniqueness of the query resulted in the need for the individual with the State Bar to discuss the matter with her supervisor and call back after having done so." Later the same day, the person from the ethics hotline called Mendoza and advised Mendoza that she "had a *'paramount' duty to* [*her*] *clients* to communicate this development in the case as well as the potential adverse consequences that PHL would suffer as a result of what had transpired by this filing." (Original italics.) The person from the ethics hotline also advised Mendoza that "while the case of *State Compensation Insurance Fund v. WPS, Inc.*[, *supra*,] 70 Cal.App.4th 644, addressed the situation where an attorney was inadvertently provided with attorney/client privileged information from opposing counsel, that case was clearly distinguishable and inapplicable to these facts on several bases."

Mendoza's assertion that this contact with the State Bar ethics hotline necessarily establishes that she acted in good faith is without merit for two reasons: (1) Mendoza did not discuss with the person at the ethics hotline her duties with respect to the protective order and (2) in any event, self-serving

evidence of what was said in a confidential conversation with a person at the ethics hotline is unconvincing.

As we have established, this controversy is not over whether the court's placement of the Griffin declaration in its file available for public viewing caused PHL to lose the trade secrets contained in the declaration. A finding on that issue was not necessary to the court's sanctions order, and the court made no finding on that issue. Regardless of the status of PHL's alleged trade secrets (and we express no opinion on that issue), Mendoza's actions violated the protective order. The manner in which she violated the protective order justified the sanctions order pursuant to section 128.5.

Mendoza does not claim that she discussed the protective order with the person at the ethics hotline, except for her self-servingly broad statement that she "described the events in detail leading up to the situation." Because her actions in attempting to reveal PHL's trade secrets contained in a document that was filed under seal violated the protective order, it is clear to us, as it must have been to the trial court, that Mendoza did not discuss with the person at the ethics hotline the requirements of the protective order, which Mendoza was bound to obey. Instead of establishing good faith, this bolsters the trial court's conclusion that Mendoza acted in bad faith.

Even assuming, however, that Mendoza's statements about a call to the State Bar ethics hotline could have been considered as evidence of her good faith, such evidence is weak. In support of its motion for sanctions, PHL filed a statement from the State Bar's Web site describing the ethics hotline: "Although staff members cannot provide legal counsel, advice, or opinions, they can discuss issues and authorities with lawyers. By referring callers to statutes, rules, cases, and bar opinions, staff members strive to assist attorneys in reaching informed decisions about their professional responsibility questions." The ethics hotline is a "confidential research service," not a source of legal advice. In no way did this evidence concerning Mendoza's call to the ethics hotline bind the trial court to conclude that Mendoza acted in good faith.

## II

### *The Wallises' Actions*

The Wallises make four arguments supporting their position that the trial court abused its discretion: (A) they did not know that PHL intended to file the Griffin declaration under seal, (B) they relied on PHL's prior public

filings of purported trade secrets, (C) PHL made no effort to protect its trade secrets after being notified of the public availability of the Griffin declaration, and (D) they relied on Mendoza's statements of law that trade secrets, once filed publicly, lose their protection under the law. The Wallises' arguments are stated only briefly and largely echo Mendoza's contentions.

### A. PHL's Intent to File Griffin Declaration Under Seal

The Wallises claim that they did not know that PHL intended to file the Griffin declaration under seal. The record belies their claim.

Dale Wallis contracted with Capitol Couriers to copy the Griffin declaration. Jill Williamson of Capitol Couriers went to the courthouse to make the copy but she was confused as to what to copy. She called Dale Wallis, who told her to copy the one that said it was under seal. Therefore, Dale Wallis knew that the Griffin declaration stated on its face that it was "under seal."

In addition to this statement, the Wallises' actions showed a desire to have the Griffin declaration viewed publicly but wanted to have others do it so that the Wallises could avoid liability for having viewed it. This betrays the Wallises' belief that the Griffin declaration was filed under seal and that it would be a violation of the protective order for the Wallises to view it.

### B. Purported Reliance on PHL's Practice of Revealing Secrets

The Wallises assert that they could reasonably rely on the prior conduct of PHL in making public their alleged trade secrets in court filings to conclude that PHL meant to make public the information attached to the Griffin declaration. This is the same assertion made by Mendoza. It is fully discussed and rejected above.

### C. PHL's Purported Failure to Protect Its Trade Secrets

The Wallises assert PHL failed to protect its alleged trade secrets in the Griffin declaration even after Mendoza notified PHL's counsel of the public availability of the Griffin declaration. This is also the same as an assertion made by Mendoza. It is fully discussed and rejected above.

### D. Reliance on Mendoza's Advice Concerning Trade Secrets

The Wallises state that "based on [Mendoza's] statements about the law, [the Wallises] knew that, once supposedly trade secret information is filed as a public record, the trade secret privilege is waived." As we explained above,

the law concerning trade secrets was not at issue in determining whether the Wallises and Mendoza violated the protective order and were subject to sanctions.

The trial court did not abuse its discretion in imposing sanctions on the Wallises. Knowing that the Griffin declaration contained the alleged trade secrets that were the subject of this action and that the presence of the unprotected Griffin declaration in the public file was inadvertent, the Wallises hatched a scheme to have third parties view and copy the contents of the Griffin declaration. Contrary to their claims of innocent motives, the trial court's conclusion that this was undertaken in bad faith finds support in the record. Additionally, Dale Wallis's deletion of the e-mail containing the address to the Web site where the Griffin declaration had been posted, and James Wallis's instructions to Megan Evans to discard the CD, support the trial court's finding of bad faith obstruction of the investigation into their wrongdoing.

### III

#### Timeliness of Sanctions

The Wallises and Mendoza contend that a sanctions award is premature because it has not yet been determined whether PHL has any trade secrets to protect. "As [the Wallises] have repeatedly advised the trial court," argue the Wallises and Mendoza, "none of the 800-plus pages of documents attached to the Griffin declaration contains trade secret information." This argument, again, is meritless.

The trial court sanctioned the Wallises and Mendoza for their violations of the protective order. The court did not attempt to determine whether the information attached to the Griffin declaration included protectable trade secrets. As discussed fully above, we agree with the trial court that the question concerning trade secret status of the information attached to the Griffin declaration is not relevant to the determination of whether the Wallises and Mendoza were properly subject to sanctions.

Instead of supporting the position of the Wallises and Mendoza that the trial court abused its discretion in imposing sanctions, this argument is additional evidence that they are willing to obfuscate and misdirect when confronted with their duties under the protective order. The trial court did not abuse its discretion.

## DISPOSITION

The order is affirmed. The cross-complainants (PHL, Wichmann, and Holmes) are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Scotland, P. J., and Hull, J., concurred.

A petition for a rehearing was denied December 19, 2008, and the opinion was modified to read as printed above. The petition of appellant Dale M. Wallis for review by the Supreme Court was denied March 11, 2009, S169548.