Filed 3/2/21  Smith v. Hunt & Henriques CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| RUSSELL SMITH, Plaintiff, v. HUNT & HENRIQUES, Defendant and Respondent; ABBAS KAZEROUNIAN et al., Objectors and Appellants. | D076278 (Super. Ct. No. 37-2017-0001062-CU-NP-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Richard L. Strauss, Judge.  Reversed with directions.

Kazerouni Law Group, Robert L. Hyde and Mike Kazerouni for Objectors and Appellants.

Simmonds & Narita, Tomio B. Narita and Jeffrey A. Topor for Defendant and Respondent.

No appearance for Plaintiff.

Abbas Kazerounian, Matthew Loker, Joshua Swigart, and Daniel Shay (collectively, Attorneys) appeal from an order imposing $125,690.56 in sanctions against them under Code of Civil Procedure[1] section 128.5 for prosecuting litigation the superior court found to be frivolous and in bad faith. On appeal, Attorneys contend: (1) the finding that the action was frivolous is not supported by substantial evidence; (2) the superior court applied an incorrect legal standard of bad faith; (3) the moving party, Hunt & Henriques (H&H), failed to comply with safe harbor provisions in section 128.5, subdivision (f)(1)(B); (4) sanctions are improper because Attorneys sought to dismiss and later to amend the complaint; (5) the order lacks required specificity; and (6) the sanctions "violate California public policy."

We conclude that an essential finding—that the challenged action be objectively frivolous—is not supported by substantial evidence. Accordingly, we reverse with directions to deny sanctions, making it unnecessary to consider Attorneys' remaining contentions.

In addition to granting H&H's sanctions motion, the trial court also denied Attorneys' request for sanctions against H&H for their filing the sanctions motion. We dismiss that aspect of Attorneys' appeal for lack of jurisdiction. (*McCluskey v. Henry* (2020) 56 Cal.App.4th 1197, 1210, fn. 2 (*McCluskey*).)

FACTUAL AND PROCEDURAL BACKGROUND

A.     *H&H Sends a Collection Letter to Smith*

H&H is a law firm representing clients seeking to recover delinquent consumer debt. In August 2016, H&H wrote to Russell Smith stating that Capital One Bank (USA), N.A. (Capital One) had engaged the firm to collect

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

$2,871.45 on his account (the Letter).  The Letter informs Smith he may dispute the debt "by mailing a notice" to H&H within 30 days.

B.    *Smith Sues Capital One*

About three weeks later, Smith filed a limited civil action against Capital One, *Smith v. Capital One Services, LLC* (Super. Ct. San Diego County, 2016, No. 37-2016-00030378-CL-MC-CTL) (the *Cap One* action). Smith alleged that Capital One violated the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.) (the Rosenthal Act) and other laws by repeatedly contacting him about his accounts despite knowing he was represented by counsel.  In the *Cap One* action Smith was represented by Abbas Kazerounian (Kazerouni Law Group), Daniel G. Shay (Law Office of Daniel G. Shay), and Joshua Swigart (Hyde & Swigart).  Capital One was represented by Doll, Amir & Eley, LLP—not by H&H.

C.    *Smith Settles the Cap One Action with a Broadly Worded Release*

In December 2016, Smith settled the *Cap One* action.  Capital One paid Smith $6,000 and waived amounts due on his accounts.  Kazerounian signed the settlement agreement (Agreement) as Smith's attorney, agreeing to "form and confidentiality."

The Agreement contains a broadly worded provision releasing Smith's claims against Capital One and its "attorneys" (the Release):

> "[Smith] . . . hereby releases  and forever discharges [Capital One and other enumerated entities] and each of their respective past, present, and future employees, stockholders, officers, directors, partners, agents, brokers, contractors, servants, affiliates, subsidiaries, parents, departments, divisions, insurers, **attorneys**, predecessors, successors and assigns . . . from any and all claims or counterclaims, causes of action, remedies, damages, liabilities, debts, suits, demands, actions, costs, expenses, fees, controversies, set-offs, third party actions or proceedings of whatever kind or nature . . . whether known

3

or unknown, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, which [Smith] . . . may now have, have ever had, or in the future have against [the released parties], without exception or limitation, including but not limited to any and all claims arising directly or indirectly from or in any way related to [Smith's Capital One accounts] and/or [the *Cap One* action] . . . ." (Italics and bold added.)

D. *Smith Files a Putative Class Action Against H&H*

In January 2017, Smith filed a putative class action against H&H entitled *Smith v. Hunt & Henriques, Inc.* (Super. Ct. San Diego County, 2017, No. 37-2017-00001062-CU-NP-CTL ) (the Class action).[2] Represented by the same lawyers who had represented him in the *Cap One* action (plus Matthew Locker of the Kazerounian firm), Smith alleged that the Letter unlawfully limited his ability to dispute the debt by "mail only." Smith filed the action individually and on behalf of a class generally defined as those to whom H&H had sent such demand letters within one year prior to filing the action.

Apparently H&H's involvement with Smith was limited to sending the Letter. As a result, H&H and its defense counsel were unaware of the *Cap One* action. Moreover, Smith deflected H&H's attempts to elicit such information in discovery. For example, H&H propounded interrogatories asking Smith to identify writings "reflecting any dispute relating to the financial obligation" identified in the demand letter. Although the *Cap One* action would be responsive, Smith (through counsel) responded that he

---

[2]    Smith originally filed the action in district court; however, after proceedings not relevant to this appeal, the case was ultimately filed in state court.

4

" 'lacks sufficient information to respond to this Interrogatory.' "[3]  In another interrogatory, H&H asked Smith if he "contacted" Capital One "at any time to dispute" his account.  Again Smith responded he "lacks sufficient information to respond to this Interrogatory."  H&H also requested that Smith produce documents "reflecting any dispute" regarding his Capital One accounts.  Although the Agreement is responsive, Smith stated he "lacks responsive documents."[4]

E.    *H&H's Lawyers Obtain the* Cap One *Settlement*

While preparing for Smith's deposition in September 2018, H&H's lawyers learned of the *Cap One* action, and that the same firms representing Smith there also represented him in the Class action.  In October 2018, counsel for H&H issued a subpoena to Capital One to produce certain documents, including the Agreement.  Capital One objected on the grounds that the Agreement was confidential, and also asserted several "general objections"—including attorney-client privilege.  After Smith's lawyers refused to stipulate to a protective order, the court entered a protective order and Capital One produced the Agreement.

---

[3]    A footer on each page of Smith's interrogatory responses states, "Plaintiff Caleb Long's responses to defendant Ditech Financial, LLC's special interrogatories, set one."  Apparently, Smith's lawyers reused responses from some other client's case.

[4]    Evasive discovery responses are sanctionable under section 2023.010, subdivision (f), not under section 128.5.  (See § 128.5, subd. (e) ["This section shall not apply to disclosures and discovery requests, responses, objections, and motions."]  Whether Attorneys' conduct is sanctionable under the Civil Discovery Act (§ 2016.010 et seq.) is not before us and we express no opinion on that issue.

F.    *Smith Unsuccessfully Attempts to Dismiss the H&H Action and Files a Bankruptcy Petition*

In January 2019, Attorneys filed a request for dismissal without prejudice of the Class action. In an accompanying declaration, counsel stated the action was being dismissed because the court had denied a motion to compel H&H to produce financial records, and as a result, "the superiority element will be unmet." However, the clerk declined to enter the dismissal without a court order. (Cal. Rules of Court, rule 3.770(c); *Fidelity National Home Warranty Company Cases* (2020) 46 Cal.App.5th 812, 826 [a putative class action may be dismissed without notice to the class members if the court finds that the dismissal will not prejudice them].)

Later the same month, Smith filed a bankruptcy petition. His asset schedules include the Class action; however, Smith stated he "wishes to dismiss the class case via a 'mutual walkaway.'"

G.    *H&H Serves and Later Files a Motion for Sanctions*

In February 2019, H&H served Attorneys with an unfiled motion seeking $112,653.50 in sanctions against Attorneys (but not against Smith). Purporting to comply with section 128.5's safe harbor provisions, H&H indicated the motion for sanctions would be filed unless Smith dismissed the Class action *and* paid $112,635.50 as H&H's attorneys' fees and costs incurred in defending the Class action.

After Attorneys failed to pay the $112,653.50, H&H filed the sanctions motion. The thrust of the motion was that Smith had released H&H, as Capital One's attorneys. Because the same law firms who filed the Class action also represented Smith in the *Cap One* action, H&H asserted that Attorneys "had to know that this case was legally unfounded from the start." H&H further asserted that Attorneys acted in bad faith—evidenced by their attempt to conceal the Release by evasive discovery responses.

6

Citing *San Diegans for Open Government v. City of San Diego* (2016) 247 Cal.App.4th 1306, 1316 (*San Diegans*), H&H asserted that under section 128.5, the court should apply an " 'objective reasonable attorney standard' " and "[n]o showing of *subjective* bad faith is required."[5]  Without citing any law, H&H's lawyers further asserted that the "wholly improper" Class action "cannot be cured by . . . substitution of a new named plaintiff."[6]

Attorneys opposed the motion on several different grounds, one of which was that H&H was not a party to the Release.  They asserted that H&H "would need to . . . prove that the Release . . . was made for its benefit and that the intent to do so appears in the language of the [A]greement."  According to Attorneys, there was no evidence that Smith and Capital One had intended to include H&H among the unnamed "attorneys" released:

---

[5]     This misstates the law.  In response to *San Diegans*, urgency legislation effective August 2017 amended section 128.5 " 'clarif[ying] that the standard applied in section 128.5 is subjective bad faith.' "  (*In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 134 (*Taeb*).)  As a result of these amendments, "no vestige remain[ed] of the holdings in [*San Diegans, supra,*] 247 Cal.App.4th 1306 . . . concerning the requirements of section 128.5."  (*Taeb*, at p. 128.)

In their opposition, Attorneys also overlooked the urgency legislation, and did not even cite *San Diegans*.(1CT173-192)!  As a result, both sides failed to fulfill their obligation to inform the trial court of the applicable law.

[6]     This also misstates law.  " 'If . . . the [trial] *court* concludes that the named plaintiffs can no longer suitably represent the class, it *should at least afford plaintiffs the opportunity to amend their complaint*, to redefine the class, or *to add new individual plaintiffs, or both, in order to establish a suitable representative*."  (*CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 288.)

7

> "H&H is a law firm that is retained by creditors to recover delinquent debts; nothing more, and H&H were [*sic*] not involved in the [*Cap One*] action in any way, and consequently was never referred to in the Release Agreement."

Attorneys further noted that the Release uses the term "attorneys," not law firms. Citing cases distinguishing between attorneys and law firms in applying the Rosenthal Act, they contended that even if H&H's attorneys were released, the Release did not include the H&H firm.[7]

H.  *The Court Grants H&H's Motion for Sanctions*

After conducting a hearing, the court granted H&H's sanctions motion in a minute order that was later attached to a separate written order:

> "[H&H] has proffered evidence showing sanctionable conduct. (See [*San Diegans, supra,* 247 Cal.App.4th at p. 1320].) Some, but not all, of the evidence [H&H] has tendered includes the following: Plaintiff's counsel . . . represented [Smith] in an earlier separate action in this court. Plaintiff executed a [general release] in that case and agreed to release claims against Capitol One, its attorneys, and regarding claims relating to his account . . . . Attorney Kazerounian signed the release agreement.

> "These same attorneys, plus Matthew Loker of the Kazerouni Law Group, are listed as attorneys of record and filed the present action against [H&H], alleging claims that [H&H] violated the . . . Rosenthal Act by attempting to collect an unpaid balance on [Smith's] Capital One account ending in 1039.

---

7  Attorneys also argued that by demanding they pay H&H's fees to avoid sanctions, H&H had not complied with section 128.5's safe harbor provisions. They "reaffirm[ed] Smith's willingness to dismiss this [a]ction" and asked H&H to "stipulate to a dismissal." Alternatively, they suggested filing "a new amended complaint . . . with a different plaintiff proposed to be substituted into the case, one that never entered into the [r]elease [a]greement."

8

> "Plaintiff did not present adequate evidence to rebut [H&H's] showing. Plaintiff did not provide any declarations or other admissible evidence in support of its opposition. The court is unpersuaded by [Smith's] alternative arguments that the alleged conduct should not be sanctionable."

The court awarded H&H the entire amount sought ($112,653.50) plus additional amounts H&H incurred after filing the motion, for a total award of $125,690.56.[8] In July 2019, Smith appealed from the order imposing sanctions.[9] In September 2019, the court ordered the action dismissed without prejudice.[10]

## DISCUSSION

A.    *The Sanctions Order Is Not Supported by Substantial Evidence.*

1.    *Overview of Section 128.5*

Under section 128.5, a trial court may sanction certain frivolous actions and tactics undertaken in bad faith. (*CPF Vaseo Associates, LLC v. Gray* (2018) 29 Cal.App.5th 997, 1000 (*CPF Vaseo*).) "[C]onduct must be both frivolous and in subjective bad faith to support sanctions under section 128.5." (*Taeb, supra,* 39 Cal.App.5th at p. 141, fn. 8.)

---

[8]    Smith also filed a motion for sanctions, asserting that H&H's motion was itself sanctionable. The court denied Smith's motion.

[9]    Where, as here, a notice of appeal from a sanctions order is brought only in the client's name, we may construe it to include the client's sanctioned attorney(s) where it is reasonably clear that the attorneys intended to join in the appeal and the respondent was not mislead or prejudiced by the omission. (*K.J. v. Los Angeles Unified School District* (2020) 8 Cal.5th 875, 885.) We do so here.

[10]    On its own motion, the court takes judicial notice of the superior court's order entered September 27, 2019 dismissing the action without prejudice. (Evid. Code, §§ 452, subd. (d); 459, subd. (a).)

" 'Frivolous' means totally and completely without merit or for the sole purpose of harassing an opposing party." (§ 128.5, subd. (b)(2).) "Whether an action is frivolous is governed by an objective standard:  any reasonable attorney would agree it is totally and completely without merit." (*Taeb*, *supra*, 39 Cal.App.5th at p. 135.)  "Bad faith" as used in section 128.5 means an action or tactic undertaken for an improper purpose or motive.  This is a subjective inquiry.  (*Taeb*, at pp. 134–135.)

Section 128.5 is remedial, not punitive.  Where the action or tactic is the filing and service of a complaint that can be "withdrawn or appropriately corrected," section 128.5 affords a 21-day period during which a party may correct or withdraw the challenged pleading " 'without any penalty.' " (*CPF Vaseo*, *supra*, 29 Cal.App.5th at p. 1003.)  Strict compliance with the safe harbor provisions is a prerequisite to a sanctions award.  (*Id.* at p. 1007.)

We review an award of section 128.5 sanctions for abuse of discretion. (*Wallis v. PHL Associates, Inc.* (2008) 168 Cal.App.4th 882, 893 (*Wallis*).)  A ruling resting on a finding unsupported by substantial evidence is an abuse of discretion.  (*People v. Superior Court* (1998) 18 Cal.4th 667, 681.)

2. *The Finding that the Class Action Was Frivolous Is Not Supported by Substantial Evidence.*

Two factual determinations are the foundation for the court's conclusion that every reasonable attorney would have agreed Smith's claims were frivolous.  The first is that Smith had already released the claims asserted.  The second is that every reasonable attorney would agree that Smith had released those claims.  The evidence on these points is deceptively straightforward:

- The Agreement releases Smith's claims against Capital One's "attorneys."

10

- Capital One engaged H&H as attorneys to send Smith the Letter.

The problem, however, is that H&H is not a party to the Release. In addition to being a nonparty to the Release, H&H is not identified by name in the Agreement, is not referred to anywhere as an intended third-party beneficiary of the Agreement, and did not represent Capital One in the litigation giving rise to the Agreement.

The issue in the sanctions motion, therefore, is not whether Capital One engaged H&H as attorneys to send Smith the Letter. Rather, the issue is one of contract interpretation. The Class action was frivolous under section 128.5 only if every reasonable lawyer would know that "attorneys"—*as that term appears in the Release*—was intended to include H&H as a third-party beneficiary. (*Vahle v. Barwick* (2001) 93 Cal.App.4th 1323, 1328.)[11]

H&H cannot sustain that burden by merely pointing to the word "attorneys" in the Release. "Because the court must consider the circumstances of the contracting parties' negotiations to determine whether a third party not named in the release was an intended beneficiary, it will seldom be sufficient for the third party simply to rely on a literal application of the terms of the release. 'The fact that . . . the contract, if carried out to its terms, would inure to the third party's benefit[,] is insufficient to entitle him or her to demand enforcement. [Citations]. However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract. [Citation]. Whether a third party is an

---

[11] The Agreement provides that it is to be "construed in accordance with and governed by the laws of the United States of America and by the internal laws of the Commonwealth of Virginia." However, in the superior court and on appeal the parties have consistently assumed that California law governs; therefore, we apply California law. (*Glickman v. Collins* (1975) 13 Cal.3d 852, 857, fn. 1.)

11

intended beneficiary . . . to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered.' " (*Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 349.)

H&H offered no extrinsic evidence of the contracting parties' intent in negotiating the terms of the Release. Its motion is supported by a single declaration, executed by one of the attorneys representing H&H in the Class action. With respect to the Release, apart from authenticating the document, the declaration merely notes that it contains the word " 'attorneys.' "

Perhaps in *some* other case that might be enough, but not here. In response to H&H's subpoena, Capital One objected to producing the Agreement on numerous grounds, including confidentiality and attorney-client privilege. Those objections make sense only if H&H was *not* considered Capital One's attorneys in the *Cap One* action. Further, other parts of the Agreement identify Capital One's attorneys as Doll, Amir & Eley LLP. Arguably, Smith and Capital One intended "attorneys" as used in the Release to refer to the Doll, Amir firm. Additionally, for several years while defending this case, H&H did not even know about the *Cap One* litigation, nor its settlement. A jury could reasonably question the veracity of H&H's claim to be an intended third-party beneficiary of a release in a case it knew nothing about.

Finally, H&H is a business entity, a law firm. That Smith released his claims against Capital One's "attorneys" might include law firms, but it might not. It depends on the parties' intent, and here there is no evidence of the parties' intent other than their use of the word "attorneys." As Attorneys emphasized at the hearing, in some legal contexts courts have distinguished

12

law firms from the attorneys comprising them.[12]  For example, in *Abels v. JBC Legal Group, P.C.* (N.D.Cal. 2005) 227 F.R.D. 541, the court noted that in defining a " 'debt collector,' " the Rosenthal Act excludes "an attorney or counselor at law." (*Abels*, at p. 547.)  Because the Legislature specifically excluded attorneys but was silent as to excluding law firms, the court held that the law firm defendant is a " 'debt collector' " within the meaning of that statute.

In deciding this case, it is not necessary for us to definitively decide whether "attorneys" as used in the Release excludes law firms, and we express no opinion on that issue.  Rather, the outcome determinative point is that a lawyer could reasonably contend that the business entity, H&H, was not an intended third party beneficiary of this Release, only its individual attorneys were.

Apparently recognizing that the sanctions order is vulnerable on these grounds, H&H also asserts that it is released as Capital One's "agents" and "independent contractors"—terms also in the Release.  However, H&H did not make this argument in its moving papers in the trial court, but rather raised it for the first time in its reply.  The trial court did not consider this reply argument in its ruling—and properly so.  (See *Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733, 774.)  The ruling is based solely on Smith having released "claims against Capital One, [and] its attorneys."

---

[12]  "Mr. Hyde:  And this issue has been litigated many times.  And I would like to cite a case that's called *Graziano* [*v.*] *Hunt & Henriques*.  Mr. Narita was on that case.  The issue on that case was:  Is an attorney and a law firm the same thing or are they separate entities?  [¶]  He argued what he's arguing today.  He said they are the same thing.  We, as we always say, no, they're not the same thing.  They're separate entities.  The [c]ourt ruled in our favor."

13

For similar policy reasons, we likewise decline to consider the point because a party "may not change his theory of the case for the first time on appeal." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 321, fn. 10.) That rule is especially apt here because agency and independent contractor status are ordinarily factual issues, and neither was litigated in the sanctions motion. Moreover, even if we did consider the argument, it suffers from the same fatal defect: without evidence of Capital One's and Smith's intent in entering into the Release, "agents" and "independent contractors" are just as ambiguous as "attorneys" with respect to whether the parties intended to include H&H within those broad categories.

In sum, a reasonable attorney could assert that Smith did not release H&H under the Agreement. That argument may perhaps lack merit and may even be extremely unlikely to prevail. However, " 'sanctions should be used sparingly in the clearest of cases to deter the most egregious conduct' " and " 'an action that is simply without merit' " or is " 'extremely unlikely to prevail, should not incur sanctions.' " (*Wallis*, *supra*, 168 Cal.App.4th 882, 893.)

Therefore, the order imposing sanctions must be reversed with directions to deny the motion. (See *Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 153–154 [directions to enter defense judgment where reversal for insufficient evidence].) In light of this disposition, it is unnecessary to consider Attorneys' other contentions about the sanctions order.

B.     *Attorneys' Appeal from the Order Denying Their Cross Motion for Sanctions Is Dismissed.*

In addition to challenging the order imposing sanctions, Attorneys also contend the court erroneously denied their motion seeking sanctions against H&H for filing the sanctions motion. However, an order denying a motion for

14

section 128.5 sanctions is not an appealable order, nor is it cognizable on appeal from an order granting sanctions in the same case. (*McCluskey*, *supra*, 56 Cal.App.5th at p. 1201, fn. 2.) Attorneys' remedy was to promptly file a petition for a writ of mandate and move to consolidate that petition with this appeal, or alternatively raise the issue in a timely appeal from the later judgment of dismissal. (*Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1105 [dismissal without prejudice is an appealable judgment unless there is a stipulation facilitating potential future litigation of the dismissed claims].)

"The appealability of the judgment or order is jurisdictional and an attempt to appeal from a nonappealable judgment or order will ordinarily be dismissed." (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297.) Accordingly, we dismiss Attorneys' appeal to the extent it is taken from the order denying sanctions for lack of appellate jurisdiction.[13]

---

[13] Although H&H did not seek to dismiss Attorneys' attempted appeal from the order denying sanctions, we advised the parties we were considering that disposition and provided an opportunity to address the point at oral argument. Both sides indicated they had no objection to the proposed resolution.

DISPOSITION

The order imposing sanctions is reversed with directions to enter a new order denying the motion.

Attorneys' appeal from the order denying sanctions is dismissed.

In the interest of justice, the parties to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


DATO, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.

16