Filed 1/31/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NUTRITION DISTRIBUTION, LLC,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SOUTHERN SARMS, INC.,<br><br>    Defendant and Appellant. | B280983<br><br>(Los Angeles County<br>Super. Ct. No. BC616482) |

　

APPEAL from an order of the Superior Court of Los Angeles Court, Michael L. Stern, Judge. Affirmed.

Lewis Brisbois Bisgaard & Smith, Arezoo Jamshidi, Catherine M. Asuncion, Daniel C. DeCarlo, Josephine Brosas and Griffen J. Thorne, for Defendant and Appellant.

Tauler Smith, Robert Tauler and Lisa M. Zepeda, for Plaintiff and Respondent.

_____

Code of Civil Procedure section 128.5[1] authorizes a trial court to award sanctions for bad faith actions or tactics that are frivolous or solely intended to cause delay.  Pursuant to former subdivision (f) of section 128.5, effective from January 1, 2015 until amended by urgency legislation enacted August 7, 2017 (former subdivision (f)), any such sanctions had to be imposed "consistently with the standards, conditions, and procedures set forth in subdivisions (c),(d), and (h) of Section 128.7."

Ruling that former subdivision (f) incorporated the 21-day safe harbor notice-and-waiting period of section 128.7, subdivision (c)(1), the trial court denied Southern SARMs Inc.'s postjudgment motion for sanctions against Nutrition Distribution, LLC because Southern SARMs had failed to give Nutrition Distribution the required notice.  We affirm.  As reflected in the plain language and legislative history of former subdivision (f), and confirmed by the August 2017 amendments to that provision, a 21-day waiting period applies to a motion for sanctions under section 128.5 that, as here, is directed to allegedly improper actions or tactics that can be withdrawn or appropriately corrected.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Nutrition Distribution's Pleadings*

In a complaint filed in April 2016 Nutrition Distribution, LLC, dba Athletic Xtreme, a manufacturer and marketer of nutritional supplements, sued Southern SARMs, a competing nutritional supplement company, for unfair competition (Bus. &

---

[1]  Statutory references are to this code unless otherwise stated.

Prof. Code, § 17200 et seq.) and false advertising (Bus. & Prof. Code, § 17500 et seq.). Nutrition Distribution alleged Southern SARMs had misbranded and unlawfully marketed its product (MK-2866) Ostarine, which contained as its active ingredient a selective androgen receptor modulator (SARM). According to Nutrition Distribution's pleading, "SARMs, like Defendant's Ostarine Product, are synthetic drugs with similar effects to illegal anabolic steroids." Specifically, Nutrition Distribution alleged, although Southern SARMs labeled its product as not intended to treat, cure or diagnose any condition or disease and not for human consumption, it simultaneously marketed the product on its website and otherwise as a new miracle dietary supplement to bodybuilders and other competitive athletes to enhance their physiques, promising, for example, lean mass increase and accelerated fat loss in an easy-to-dose oral form. According to Nutrition Distribution, Southern SARMs also misrepresented that its Ostarine product affords similar benefits to testosterone and other anabolic steroids without the negative side effects.

As remedies for these alleged violations of the unfair competition and false advertising laws, Nutrition Distribution sought compensatory damages, profits earned by Southern SARMs from its misleading marketing practices, restitution of all of Southern SARMs's "ill-gotten gains," preliminary and permanent injunctive relief prohibiting Sothern SARMs from producing, licensing, marketing and selling not only its Ostarine product but also any other product containing selective androgen receptor modulators, and attorney fees.

After the parties met and conferred to discuss Southern SARMs's contemplated motion to strike and demurrer to the

3

complaint, Nutrition Distribution filed a first amended complaint, which contained the same two causes of action and still requested Southern SARMs's profits, restitution of its purportedly ill-gotten gains and the broad preliminary and permanent injunctive relief set forth in the original complaint. The amended pleading, however, deleted the prayer for compensatory damages and attorney fees. It also omitted allegations that Southern SARMs's marketing of its Ostarine product without any label statements on its packages or containers violated the federal Food, Drug, and Cosmetic Act, averring instead that the product was currently under investigation by the Food and Drug Administration as a new pharmaceutical drug.

  2. *Southern SARMs's Demurrer and the Trial Court's Ruling*

Southern SARMs demurred to the first amended complaint, arguing Nutrition Distribution was not entitled to any of the relief it had demanded. First, as to its request for a monetary recovery, Southern SARMs asserted that Nutrition Distribution was seeking standard tort damages, which are not recoverable in an action for unfair competition or false advertising. Nutrition Distribution was not entitled to restitution or restitutionary disgorgement, which are ordinarily available remedies, Southern SARMs contended, because it had failed to allege Southern SARMs had wrongfully acquired money or property in which Nutrition Distribution had a vested interest. Second, as to the prayer for injunctive relief, Southern SARMs argued the request by Nutrition Distribution was overly broad, seeking a wholesale proscription of Southern SARMs's production, marketing or sales of any product containing selective androgen receptor modulators

4

rather than prohibiting the allegedly false or misleading advertising of Ostarine. In the absence of a right to the relief sought, Southern SARMs contended, Nutrition Distribution had failed to plead viable causes of action.

The final section of Southern SARMs's memorandum of points and authorities in support of its demurrer argued that Nutrition Distribution's assertion of frivolous claims and bad faith conduct warranted imposition of sanctions pursuant to sections 128.5 and 128.7, subdivision (c)(2). Counsel for Southern SARMs insisted he had repeatedly pointed out that Nutrition Distribution was not entitled to the relief it sought and its pleadings were therefore legally insufficient. Accordingly, in addition to sustaining its demurrer in its entirety, Southern SARMs requested that the court issue an order to show cause to Nutrition Distribution and its counsel as to why sanctions should not be awarded.

After full briefing and oral argument, the court sustained Southern SARMs's demurrer without leave to amend.[2] No minute order reflecting that ruling or the court's reasoning is included in the record on appeal, and no reporter's transcript of the hearing has been provided. However, the notice of ruling prepared by counsel for Southern SARMs includes the following statement, "The Court denied Defendant's request for sanctions but indicated that Defendant could file a separate motion for sanctions if Defendant chooses." A judgment and order of dismissal was entered on September 15, 2016.

---

[2]     The court at the same hearing denied Nutrition Distribution's motion for a preliminary injunction and denied Southern SARMs's motion to strike as moot.

5

### 3. *Nutrition Distribution's Appeal of the Judgment*

Nutrition Distribution appealed the order of dismissal. We affirmed, holding Nutrition Distribution had failed to allege facts that would entitle it to restitution under the unfair competition or false advertising laws or that would justify the broad injunctive relief it sought prohibiting all production and sales of any product containing selective androgen receptor modulators. (*Nutrition Distribution, LLC v. Southern SARMs, Inc.* (Nov. 28, 2017, B278132).)

### 4. *Southern SARMs's Postjudgment Motion for Sanctions*

On November 17, 2016, more than six weeks after Nutrition Distribution had filed its notice of appeal, Southern SARMs moved for sanctions pursuant to section 128.5 against Nutrition Distribution and its counsel.[3] As grounds for sanctions Southern SARMs argued Nutrition Distribution had filed its complaint without pleading facts demonstrating its entitlement to the relief sought and, notwithstanding Southern SARMs's attempts to meet and confer in good faith, Nutrition Distribution persisted in including the same unwarranted requests in its first amended complaint. Southern SARMs also explained that Nutrition Distribution had filed a series of similar frivolous lawsuits across the country, demonstrating its intent to drive its competitor out of business. In addition, Southern SARMs's counsel complained that Nutrition Distribution's lawyer had repeatedly insulted him and called him unethical. In discussing

---

[3] Southern SARMs requested "at least $26,089.50" in attorney fees and costs incurred as a result of the alleged misconduct of Nutrition Distribution and its lawyers.

the standards for an award of sanctions under section 128.5 in its memorandum in support of the motion, Southern SARMs quoted *San Diegans for Open Government v. San Diego* (2016) 247 Cal.App.4th 1306, 1317 (*San Diegans for Open Government*), which had held, "[A] party filing a sanctions motion under section 128.5 does not need to comply with the safe harbor waiting period described in section 128.7, subdivision (c)(1)."

In opposition Nutrition Distribution argued, because the motion was filed after the court had entered judgment dismissing the action, it was untimely.  It also asserted its lawsuit had merit, there was factual and legal support for its claims for relief, and the action had not been initiated in bad faith or for an improper purpose.

In a reply memorandum Southern SARMs responded, in part, that the case law cited by Nutrition Distribution in support of its untimeliness argument concerned sanctions motions under section 128.7 and was based on the 21-day safe harbor waiting provision in that section.  It again quoted the holding of *San Diegans for Open Government*, *supra*, 247 Cal.App.4th at page 1317 that no comparable waiting period applied to a motion under section 128.5.

Following argument the court denied the motion.  The minute order, entered January 9, 2017, states, "The motion for sanctions is called and the motion is denied pursuant to the Safe Harbor Rule."  Southern SARMs filed a timely notice of appeal.

## DISCUSSION

1. *Former Subdivision (f) and Its Cross-reference to Section 128.7, Subdivision (c)*

Section 128.5, authorizing sanctions for certain bad faith actions or tactics, was originally enacted in 1981.  (Stats. 1981,

7

ch. 762, § 1, p. 2968.)  As subsequently amended in 1994, the provision applied only to proceedings initiated on or before December 31, 1994.  (Stats. 1994, ch. 1062, § 1, p. 6396; see *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 810.)  Concurrently with the creation of the 1994 sunset date for section 128.5, the Legislature adopted section 128.7, which permitted the court to award sanctions for pleadings and motions filed for an improper purpose and applied to complaints or petitions filed on or after January 1, 1995 and to any pleading, motion or similar paper filed in those proceedings.  (Stats. 1994, ch. 1062, § 3, p. 6398; see *Olmstead*, at p. 810.)[4]

Section 128.5 was revived in 2014 by Assembly Bill No. 2494 (2013-2014 Reg. Sess.), effective January 1, 2015 (Stats. 2014, ch. 425, § 1).  It authorizes a trial court to order a party, the party's attorney or both to pay reasonable expenses, including attorney fees, incurred as a result of bad faith actions or tactics that are frivolous or solely intended to cause

---

[4]     Section 128.7, still in effect in slightly amended form, was modeled on rule 11 of the Federal Rules of Civil Procedure.  (See *Musaelian v. Adams* (2009) 45 Cal.4th 512, 518, fn. 2.)  It applies to every "pleading, petition, written notice of motion, or other similar paper" presented to a court (§ 128.7, subd. (a)) and requires attorneys (or parties if they are unrepresented) to certify, through their signatures on documents filed with the court, that the pleading or motion has merit and is not being presented for an improper purpose.  (§ 128.7, subd. (b)(1)-(4); see *Musaelian*, at p. 516.)  If, after notice and a reasonable opportunity to respond, the court determines the certification was improper under the circumstances, it may impose an appropriate sanction.  (§ 128.7, subd. (c).)

unnecessary delay. (§ 128.5, subd. (a).)[5] Former subdivision (f), in effect from January 1, 2015 to August 7, 2017, at issue in this case, provided, "Any sanctions imposed pursuant to this section shall be imposed consistently with the standards, conditions, and procedures set forth in subdivisions (c), (d), and (h) of Section 128.7."

Pursuant to section 128.7, subdivision (c)(1),[6] a motion for sanctions must be made separately from any other motion and describe with specificity the allegedly sanctionable misconduct. In addition, the party seeking sanctions must serve the motion on the opposing party without filing or presenting it to the court. Service of the motion initiates a 21-day (formerly a 30-day) hold or safe harbor period. (*Li v. Majestic Industrial Hills LLC* (2009)

---

[5] Section 128.5, subdivision (b)(1), provides, "'Actions or tactics' include, but are not limited to, the making or opposing of motions or the filing and service of a complaint, cross-complaint, answer, or other responsive pleading."

[6] Section 128.7, subdivision (c)(1), provides, "A motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). Notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees."

9

177 Cal.App.4th 585, 590-591; *Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698.) During this time the offending document may be corrected or withdrawn without penalty. If that occurs, the motion for sanctions may not be filed. (§ 128.7, subd. (c)(1); see *Li*, at p. 591.) "[T]he central principle to be distilled from section 128.7's language and remedial purpose, as well as from appellate opinions interpreting section 128.7 and rule 11, is that the safe harbor period is mandatory and the full 21 days must be provided absent a court order shortening that time if sanctions are to be awarded." (*Li*, at p. 595.)

> 2. *The Analysis of Former Subdivision (f) in* <u>San Diegans</u> <u>for Open Government</u>

*San Diegans for Open Government, supra*, 247 Cal.App.4th 1306 is the only published decision interpreting former subdivision (f). The defendants in that case had moved for sanctions under section 128.5 after the plaintiff dismissed its taxpayer action for waste of public funds with prejudice, contending the plaintiff had no evidence to support that claim and had used it, together with a publicity campaign, in an attempt to wrongfully leverage a settlement. (*San Diegans for Open Government*, at p. 1312.) The trial court denied the motion. The court of appeal reversed, rejecting the plaintiff's argument the sanctions motion was procedurally defective and agreeing with the defendants that the trial court had applied an incorrect legal standard when evaluating the merits. (*Id.* at pp. 1315-1317, 1318-1319.)

As it relates to the issue now before us, and as quoted several times by Nutrition Distribution in the trial court and again on appeal, the appellate court in *San Diegans for Open Government* rejected the plaintiff's contention that the

10

requirement in former subdivision (f) that sanctions be imposed consistently with section 128.7, subdivisions (c), (d) and (h), obligated a party moving under section 128.5 to comply with the 21-day safe harbor waiting period contained in section 128.7, subdivision (c)(1). (*San Diegans for Open Government*, *supra*, 247 Cal.App.4th at p. 1316.)[7] The court gave three reasons for its conclusion.

First, section 128.7, subdivision (c), begins with an unnumbered paragraph, which provides sanctions may be awarded against attorneys, law firms and parties that have violated section 128.7, subdivision (b), or are responsible for the violation. It also states, "In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanction has exercised due diligence." Next, paragraph "(1)" sets forth the safe harbor requirement, and paragraph "(2)" provides for a similar 21-day safe harbor period if the court elects to order sanctions on its own motion.[8] The court held the

[7]     The court in *San Diegans for Open Government* also held the revived version of section 128.5 applied to all cases pending as of January 1, 2015, not only to cases filed on or after that date, and required use of an objective standard, rather than a subjective standard of bad faith. (*San Diegans for Open Government*, *supra*, 247 Cal.App.4th at pp. 1315, 1318.)

[8]     Section 128.7, subdivision (c)(2), provides, "On its own motion, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b), unless, within 21 days of service of the order to show cause, the challenged paper, claim, defense, contention, allegation, or denial is withdrawn or appropriately corrected."

11

plain language of former section 128.5, subdivision (f), referred only to "subdivision (c)," pertaining to who can be sanctioned and whether the party seeking sanctions exercised due diligence, and did not specify that motions under section 128.5 needed to be imposed consistently with the safe harbor provisions contained in the numbered subparts of section 128.7, subdivision (c). (*San Diegans for Open Government*, *supra*, 247 Cal.App.4th at pp. 1316-1317.)

Second, to the extent section 128.5 could be considered ambiguous regarding adoption of the safe harbor provisions of section 128.7, subdivision (c)(1) and (2), the court reported its review of the legislative history "reveal[ed] no mention of the section 128.7 safe harbor waiting period." (*San Diegans for Open Government*, *supra*, 247 Cal.App.4th at p. 1317.) "It is inconceivable," the court stated, "the Legislature intended to incorporate by reference a prerequisite filing requirement without mentioning the requirement." (*Ibid*.)

Third, section 128.7 is limited to misconduct in the filing or advocacy of groundless claims in signed pleadings and other papers. Section 128.5 is not so limited. As a practical matter, the court explained, requiring a party to comply with the safe harbor waiting period before filing a sanctions motion under section 128.5 makes little sense with respect to bad faith actions or tactics that, once performed, cannot be withdrawn. (*San Diegans for Open Government*, *supra*, 247 Cal.App.4th at p. 1317.)

3. *Former Subdivision (f) Incorporated Section 128.7, Subdivision (c)'s Safe harbor Provision*

The plain language of former subdivision (f) mandating that a court ordering sanctions adhere to the "standards,

12

conditions, and procedures" set forth in section 128.7, subdivisions (c), (d), and (h), given its ordinary and common meaning, appears unambiguous: All the conditions and procedures in subdivision (c)—not only those in the first, unnumbered paragraph, but also those contained in the two subsequent paragraphs, numbered (1) and (2)—must be imposed to the extent they are compatible with the other requirements of section 128.5.[9] (See *Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 519 ["[i]f the language [of the statute] is unambiguous, the plain meaning controls," and no further analysis is warranted]; *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190 [same].) That the Legislature chose to incorporate the safe harbor waiting provisions by general cross-reference, rather than specify them by name, is not a sufficient basis for ignoring the plain meaning and obvious intent of the statute, as the court in *San Diegans for Open Government* concluded. (See *San Diegans for Open Government*, *supra*, 247 Cal.App.4th at pp. 1316-1317.)

> a. *The legislative history of former subdivision (f) establishes the Legislature's intent to include a safe harbor provision*

Even if the language of former subdivision (f) allowed for more than one reasonable construction, the legislative history of Assembly Bill No. 2494 unquestionably reflects an intent to adopt

---

[9] Similarly, the standards, conditions and procedures in all of subdivision (d) of section 128.7—that is, subdivision (d)(1) and (d)(2), which limit the monetary sanctions that may be awarded under certain circumstances, and not simply the unnumbered first paragraph of subdivision (d)—are incorporated by reference by former subdivision (f).

the safe harbor provisions of section 128.7, subdivision (c)(1) and (2), as part of the revitalized section 128.5, effective January 1, 2015.  (See *John v. Superior Court* (2016) 63 Cal.4th 91, 96 ["[i]f we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views"]; *Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198 [if the statutory language may reasonably be given more than one interpretation, "'"courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute"'"].)

As originally introduced on February 21, 2014, Assembly Bill No. 2494 (2013-1014 Reg. Sess.) did not include any cross-reference to section 128.7.[10]  A number of organizations, including the California Chamber of Commerce, the California Farm Bureau Federation and the California Manufacturers & Technology Association, jointly wrote Hon. Bob Wieckowski, chair of the Assembly Judiciary Committee, in support of the bill as introduced.  Letters in opposition were sent by a number of public interest organizations and labor unions, including the Western Center on Law & Poverty, the Lawyers' Committee for Civil Rights of the San Francisco Bay Area and the California Immigrant Policy Center.  In separate letters each of those three

---

[10]    We provided the parties with copies of the legislative history materials for Assembly Bill No. 2494 that we expected to consider in deciding the case and advised them we intended to take judicial notice of those materials pursuant to Evidence Code sections 452 and 459.  We now take judicial notice of the items cited in our opinion.

14

organizations identified two primary reasons for their concern with the proposed legislation.  First, the complex differences between section 128.7 and the proposed new version of section 128.5 would leave viable and necessary litigation in limbo while a series of appeals worked their way through the appellate courts for clarification and determination.  Second, in the words of the Western Center, echoed by the other two organizations in their letters, "[U]nlike section 128.7, section 128.5 does not include a safe harbor provision. . . .  Section 128.5 does not have a 'safe harbor' provision and thus will become a weapon by parties to stall and intimidate parties into dropping litigation.  This is contrary to the public interest of using courts to resolve disputes and will significantly impact organizations like [the Western Center] from protecting the legitimate interests of its clients." (Letter from Michael Herald, Legislative Advocate, Western Center, to Hon. Bob Wieckowski, April 20, 2014; see Letter from Robert Coleman, Government Affairs Manager, California Immigrant Policy Center, to Hon. Bob Wieckowski, April 24, 2014; Letter from Meredith Desautels, Staff Attorney, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, to Hon. Bob Wieckowski, April 24, 2014.)

On May 7, 2014 Assembly Bill No. 2494 was amended to add subdivision (f), containing the language now at issue in this appeal.  In a bill analysis prepared for the Assembly Committee on Judiciary for an April 29, 2014 hearing, the proposed addition of subdivision (f), together with several other changes, were identified as "author's amendments" to "clarify the intent of the bill and address opposition concerns."  (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2494 (2013-2014 Reg. Sess.), as amended April 10, 2014, p. 4.)  The bill analysis

15

explained, "As proposed to be amended, this measure makes clear that it is intended to be read in harmony with the salutary cognate provisions of section 128.7." (*Ibid.*) The analysis concluded by stating that, as proposed to be amended, there was no known opposition to the measure. (*Id.* at p. 7.)

Given the expressed opposition to the original version of Assembly Bill No. 2494 as introduced by public interest groups because it did not include a safe harbor provision and the withdrawal of any objection to the legislation with the proposed addition of subdivision (f), the inference is unmistakable that the intent of the new subdivision was to incorporate the safe harbor provisions of section 128.7, subdivision (c), by cross-reference.

b. *The 2017 amendment of former subdivision (f) confirms the Legislature's intent to include a safe harbor provision*

In urgency legislation enacted August 7, 2017 (Stats. 2017, ch. 169, § 1), the Legislature amended section 128.5 "to clarify the previous legislative intent." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 984 (2017-2018 Reg. Sess.), as amended April 20, 2017, p. 1.)[11] Specifically as it relates to the issue presented by this appeal, rather than simply cross-referencing subdivision (c) of Section 128.7, as it formerly had, section 128.5,

---

[11] Although Nutrition Distribution's respondent's brief and Southern SARMs's reply brief were filed after the effective date of Assembly Bill No. 984, neither party mentioned the amendment to section 128.5, subdivision (f), or the discussion of *San Diegans for Open Government* in the accompanying legislative reports. We advised the parties of this development and requested that they be prepared to discuss at oral argument its effect, if any, on the issue presented by Southern SARMs's appeal.

16

subdivision (f), was amended to import (with minor language modifications) the conditions and procedures contained in that provision, including in subdivision (f)(1)(B) a 21-day safe harbor provision "[i]f the alleged action or tactic is the making or opposing of a written motion or the filing and service of a complaint, cross-complaint, answer, or other responsive pleading that can be withdrawn or appropriately corrected . . . ."[12]

The legislative reports accompanying this amendment confirm the Legislature's intent to include a safe harbor provision in former subdivision (f). (See *Eu v. Chacon* (1976) 16 Cal.3d 465, 470 ["[a]lthough a legislative expression of the intent of an earlier act is not binding upon the courts in their construction of the prior act, that expression may properly be considered together with other factors in arriving at the true legislative intent existing when the prior act was passed"]; see also *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244 ["the Legislature's expressed views on the prior import of its statutes are entitled to due consideration, and we cannot disregard

---

[12] Section 128.5, subdivision (f)(1), now states, in part, "(A) A motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific alleged action or tactic, made in bad faith, that is frivolous or solely intended to cause unnecessary delay. [¶] (B) If the alleged action or tactic is the making or opposing of a written motion or the filing and service of a complaint, cross-complaint, answer, or other responsive pleading that can be withdrawn or appropriately corrected, a notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court, unless 21 days after service of the motion or any other period as the court may prescribe, the challenged action or tactic is not withdrawn or appropriately corrected."

17

them"]; *Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1408 [same].)

Discussing the need for the amendment to former subdivision (f), the analysis of Assembly Bill No. 984 prepared for the Assembly Committee on the Judiciary explained that the committee had adopted several amendments to the 2014 legislation reviving section 128.5 "to ensure that Section 128.5 would be 'read in harmony with the salutary cognate provisions of section 128.7.'" (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 984, *supra*, at p. 8.) The 2017 amendment, the report continued, "seeks to clarify the intent behind the enactment of AB 2494 . . . and abrogate several of the holdings under *San Diegans* [*for Open Government*]." (*Ibid.*; see *id.* at p. 7 [interpretation of subdivision (f) by *San Diegans for Open Government* "is inconsistent with [its] legislative history"];[13] Sen. Com. on Judiciary, Rep. on Assem. Bill No. 984 (2017-2018 Reg. Sess.), as amended June 19, 2017, for hearing on June 27,

---

[13] The Assembly Judiciary Committee analysis also commented, "[T]he *San Diegans* court held that 'a party filing a sanctions motion under 128.5 does not need to comply with the safe harbor waiting period described in section 128.7, subdivision (c)(1).' [Citation.] In the court's reasoning, it held that since Section 128.5 is broader, safe harbor provisions of Section 128.7 'cannot be used to withdraw or appropriately correct past bad faith actions or tactics.' [Citation.] Again, while this legal analysis appears to be well-reasoned, it is inconsistent with the legislative intent that Section 128.5 should be imposed 'consistently with the standards, conditions, and procedures set forth in subdivisions (c), (d), and (h) of Section 128.7.'" (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 984, *supra*, at p. 8.)

2017, p. 3. ["Since AB 2494 took effect, courts have interpreted provisions of Section 128.5 inconsistently and, at times, at odds with the intent of the Legislature.  This bill seeks to address the apparent confusion in the courts and make the provisions of Section 128.5 completely clear."].)

* * * * *

In sum, former subdivision (f) required a party moving for sanctions to make the motion separately from other motions and requests and to describe the specific conduct alleged to be subject to sanctions, as specified in section 128.7, subdivision (c)(1).  In addition, when the motion for sanctions was based on a purportedly frivolous complaint, written motion or court filing that could be withdrawn or on some other alleged action or tactic that could be appropriately corrected, former subdivision (f) required the moving party to comply with the safe harbor waiting provisions of section 128.7, subdivision (c)(1).  Because Southern SARMs failed to provide Nutrition Distribution with the safe harbor opportunity to withdraw its first amended complaint before filing its motion for sanctions, the trial court properly denied the motion.

**DISPOSITION**

The order denying the motion for sanctions is affirmed. Each part is to bear its own costs on appeal.

PERLUSS, P. J.

We concur:

ZELON, J.                          SEGAL, J.

19