Filed 12/6/18

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CPF VASEO ASSOCIATES, LLC, et al., | D072909 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2017-00010659-CU-EN-CTL) |
| BRUCE W. GRAY et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Lisa Schall, Judge.  Reversed.

The Byrne Law Office and John P. Byrne for Appellants.

Dinsmore & Shohl, Joseph Leventhal and Elvira Cortez for Respondents.


Code of Civil Procedure section 128.5 provides the trial court with a mechanism to sanction certain bad faith actions and tactics.[1]  Pursuant to a former version of that section, the trial court ordered CPF Vaseo Associates, LLC (CPF) and its counsel, John P. Byrne, to pay Bruce W. Gray and Barbara Gray (the Grays) just over $30,000 in fees

_____

[1]      Further statutory references are to the Code of Civil Procedure.

and costs. Yet a mandatory procedural prerequisite to that award was never fulfilled. The motion requesting sanctions was served and filed on the same day, and no safe harbor period was afforded for CPF and Byrne to correct the challenged conduct. While a panel of this court previously determined that no such safe harbor applied to a sanctions motion like the one here, the Legislature's subsequent clarifying amendment of the section and the contrary opinion of another court convince us we must now reach a different conclusion. For that reason, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

CPF was granted limited provisional remedies in a suit against the Grays in Arizona. Based on that Arizona court order, CPF applied for entry of a sister-state judgment in the San Diego Superior Court under the Sister-State Money Judgment Act (SSMJA). (See §§ 1710.10 et seq.) The clerk of court subsequently entered a judgment for $34,252,215.83 in favor of CPF and against the Grays (the California Judgment). (§ 1710.25.)

Two days after being served with the relevant paperwork, the Grays' Arizona counsel Daniel G. Dowd wrote to CPF's California counsel John P. Byrne to demand withdrawal of the SSMJA application. He explained that the Arizona court order did not constitute a "sister-state judgment" within the meaning of section 1710.10, but rather was limited to specific provisional prejudgment remedies. The letter warned that if no corrective action was taken, the Grays would move to vacate the judgment and seek related attorney's fees and costs. It also explicitly contemplated seeking related sanctions under section 128.7 "given the objectively baseless nature of CPF's actions."

2

Byrne responded by letter the following day. He disputed the substance of the Grays' position, noted CPF's intent to lien the Grays' California properties, and concluded, "If you obstruct this process, I might suggest that the person and client worrying about sanctions is not my client or my firm." Dowd's subsequent reply asserted that Byrne misunderstood the nature of the Arizona court order. He reiterated the demand for corrective action. Byrne did not respond.

Thereafter, the Grays moved to vacate the California Judgment. (§ 1710.40, subd. (b).) In a separately headed section of their motion, which spanned about a page and a half, the Grays argued for sanctions under former section 128.5, postulating that the SSMJA application "completely lacked legal grounds." They requested "reasonable attorneys' fees in an amount to be determined by the Court upon submission of" a supportive application. CPF filed an opposition that challenged the merits of the Grays' position, but made no arguments specific to the Grays' request for sanctions. The Grays' reply reiterated the sanctions demand.

At the hearing on the motion to vacate, the court initially indicated its tentative ruling to grant the motion to vacate on the ground that the Arizona order was "not a final money judgment." But the court was "disinclined" to order sanctions because (1) a directive in the Arizona order regarding out-of-state enforcement "was somewhat misleading and confusing" and (2) it did not see facts showing this to be "strictly [undue] harassment." The court then invited comments from counsel. Byrne argued the merits only; he did not address the issue of sanctions. Conversely, the Grays' counsel "urg[ed]

3

the court to reconsider its ruling on the issue of sanctions." The court took the matter under submission, indicating it would take another look at the Grays' sanctions argument.

By written ruling issued a few days later (the June 2017 order), the court granted the motion to vacate the California Judgment, denied CPF's request for alternative relief, and granted the Grays' request for sanctions under section 128.5, former subdivision (a). With respect to the sanctions ruling, the court directed the Grays' counsel "to provide forthwith declarations that specify the amount sought and the manner of calculation" and "to prepare the final order, after the amount of sanctions are addressed, for the Court's signature."

A flurry of briefing ensued. CPF's filings generally contested the imposition of sanctions on the ground that no bad faith had been shown. The Grays' filings disputed that position and claimed a specific sum of fees and costs. The court ultimately ordered CPF and Byrne to pay the Grays $30,675.17 in fees and costs.

DISCUSSION

Section 128.5 authorizes sanctions for certain bad faith actions or tactics. (See *Nutrition Distribution*, *LLC v. Southern SARMS*, *Inc.* (2018) 20 Cal.App.5th 117, 123

4

(*Nutrition Distribution*).).)[2] More specifically, former section 128.5 provided the trial court with discretion to "order a party, the party's attorney, or both, to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." (Former § 128.5(a).)

Former section 128.5(f) specified that "[a]ny sanctions imposed" under section 128.5 "shall be imposed consistently with the standards, conditions, and procedures set forth in subdivisions (c), (d), and (h) of Section 128.7." The central issue before us is the import of former section 128.5(f)'s cross-reference to section 128.7(c). The first paragraph of section 128.7(c) reads as follows:

---

[2] Section 128.5 was originally enacted in 1981. (Stats. 1981, ch. 762, § 1, p. 2968.) By a 1994 amendment, its application was limited to proceedings initiated on or before December 31, 1994. (Stats. 1994, ch. 1062, § 1, p. 6396; see *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 809.) Simultaneously with that 1994 amendment, the Legislature enacted section 128.7, which provides a sanctions mechanism applicable in cases filed on or after January 1, 1995. (Stats. 1994, ch. 1062, § 3, p. 6399; *Olmstead*, at p. 810; see also *Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 590 (*Li*) ["Section 128.7 requires attorneys (or parties if they are unrepresented) to certify, through their signature on documents filed with the court, that every pleading, motion or other similar paper presented to the court has merit and is not being presented for an improper purpose"].) In 2014, section 128.5 was revived by Assembly Bill No. 2494. (Stats. 2014, ch. 425, § 1; *Nutrition Distribution*, *supra*, 20 Cal.App.5th at p. 124.)

The version of section 128.5 enacted in 2014 governs this appeal. We refer to that version as "former section 128.5," and for readability, abbreviate references to subdivisions (a), and (f) of that provision respectively as "former section 128.5(a)," and "former section 128.5(f)." In a similar fashion, we shorthand section 128.7, subdivisions (c), (c)(1), and (c)(2) respectively as "section 128.7(c)," "section 128.7(c)(1)," and "section 128.7(c)(2)."

"If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation. In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence."

The "conditions stated below" are delineated in subdivisions (c)(1) and (c)(2).

Section 128.7(c)(1) provides a two-step process with a safe harbor waiting period: The moving party is to *serve* the sanctions motion on the offending party, but cannot *file* it with or present it to the court "unless, within 21 days of service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Section 128.7(c)(2) provides a similar safe harbor period applicable when sanctions are sought on the court's own motion.

The safe harbor period is "designed to be remedial, not punitive." (*Li*, *supra*, 177 Cal.App.4th at p. 591.) It was "intended to foster compliance . . . and to conserve judicial resources otherwise spent adjudicating a sanctions motion by affording a prescribed period of time during which a party may correct or withdraw a frivolous or improper pleading or motion without any penalty." (*Id.* at pp. 593–594; see also *Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 132 (*Barnes*).)

CPF and Byrne argue that, per former section 128.5(f), the Grays were obligated to comply with the safe harbor provision found in section 128.7(c)(1) before moving for sanctions under former section 128.5. They posit that the Grays' failure to comply with this procedural requirement is grounds for reversal of the sanctions order. We review this

6

claim, insofar as it presents a question of statutory construction, de novo. (*Optimal Markets*, *Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921–922; *Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698 (*Martorana*).)

Authority is split on this question—i.e., does the safe harbor provision from section 128.7(c)(1) apply to a former section 128.5 sanctions motion? In June 2016, a panel of this court concluded it did not. (See *San Diegans for Open Government v. City of San Diego* (2016) 247 Cal.App.4th 1306, 1311 (*San Diegans for Open Government*).) As will be explained, however, section 128.5 was subsequently amended as of August 1, 2017, to " 'clarify the legislative intent,' " at least partially in light of confusion caused by that very case. (See *Nutrition Distribution*, *supra*, 20 Cal.App.5th at p. 129, quoting Assem. Com. on Judiciary Analysis of Assem. Bill No. 984 (2017–2018 Reg. Sess.) as amended April 20, 2017, p. 1; see also *Nutrition Distribution*, at p. 130 & fn. 13.) By its express terms, the amendment "applies to actions or tactics that were part of a civil case filed on or after January 1, 2015."[3] (§ 128.5, subd. (i).)

With the benefit of the clarified Legislative intent expressed in the amended statute, Division Seven of the Second Appellate District recently reached a different conclusion. (*Nutrition Distribution*, *supra*, 20 Cal.App.5th at p. 130.) That court held that "when the motion for sanctions [under section 128.5 is] based on a purportedly frivolous complaint, written motion or court filing that could be withdrawn or on some other alleged action or tactic that could be appropriately corrected, former [section

---

3    This case was filed in March 2017.

128.5](f) required the moving party to comply with the safe harbor waiting provisions of section [128.7(c)(1)]." (*Ibid.*) In other words, "[a]ll the conditions and procedures in [section 128.7](c)—not only those in the first, unnumbered paragraph, but also those contained in the two subsequent paragraphs, numbered (1) and (2)—must be imposed to the extent they are compatible with the other requirements of section 128.5." (*Id.* at p. 126; see also *id.* at p. 126, fn. 9; § 128.7(c) [specifying that sanctions are to be imposed "subject to the conditions stated below"].)

In addition to its reliance on the plain language of the statute, *Nutrition Distribution* found support for its statutory interpretation in section 128.5's legislative history. As originally introduced, Assembly Bill No. 2494 (which led to the 2014 revival of section 128.5) contained no cross-reference to section 128.7. (*Nutrition Distribution*, *supra*, 20 Cal.App.5th at p. 127.) The cross-reference was added only after several letters of opposition were received that, among other things, pointed out the missing safe harbor period. (*Id.* at p. 128.)

Beyond the legislative history, *Nutrition Distribution* relied on the subsequent 2017 amendment to section 128.5 and the related legislative reports as confirming its statutory reading. (*Nutrition Distribution*, *supra*, 20 Cal.App.5th at pp. 129–130.) The amendment revised section 128.5, subdivision (f) to include specific "conditions and procedures" for sanctions imposed pursuant to that section, which generally mirror those in section 128.7. (See *Nutrition Distribution*, at p. 129.) Among those conditions is section 128.5, subdivision (f)(1)(B):

8

> "If the alleged action or tactic is the making or opposing of a written motion or the filing and service of a complaint, cross-complaint, answer, or other responsive pleading that can be withdrawn or appropriately corrected, a notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court, unless 21 days after service of the motion or any other period as the court may prescribe, the challenged action or tactic is not withdrawn and appropriately corrected."

Section 128.5, subdivision (f)(1)(D) provides for a similar safe harbor period when sanctions are imposed on the court's own motion.

As chronicled in *Nutrition Distribution*, the relevant legislative history reports reflect that "the committee had adopted several amendments to the 2014 legislation reviving section 128.5 'to ensure that Section 128.5 would be "read in harmony with the salutary cognate provisions of section 128.7." ' (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 984, *supra*, as amended Apr. 20, 2017, at p. 8.) The 2017 amendment, the report continued, 'seeks to clarify the intent behind the enactment of [Assembly Bill No.] 2494 . . . and abrogate several of the holdings under *San Diegans* [*for Open Government*].' (*Ibid.*; see *id.* at p. 7 [interpretation of [former section 128.5](f) by *San Diegans for Open Government* 'is inconsistent with [its] legislative history']; Sen. Judiciary Com., Rep. on Assem. Bill No. 984 (2017–2018 Reg. Sess.) as amended June 19, 2017, p. 3 ['Since [Assembly Bill No.] 2494 took effect, courts have interpreted provisions of Section 128.5 inconsistently and, at times, at odds with the intent of the Legislature. This bill seeks to address the apparent confusion in the courts and make the provisions of Section 128.5 completely clear.'].)" (*Nutrition Distribution*, *supra*, 20 Cal.App.5th at p. 130, footnote omitted.)

9

In light of the legislative history of—and especially the significance of the subsequent clarifying amendment to—section 128.5, we find *Nutrition Distribution* persuasive. Of course, the decision to reach a legal conclusion that differs from an opinion by another panel of this court is not one we make lightly. (See *San Diegans for Open Government*, *supra*, 247 Cal.App.4th 1306.) Indeed, sound institutional principles of stare decisis encourage us to follow existing precedent, and those principles apply, if anything, more strongly to past decisions of this court. But the fundamental issue here is one of *legislative* intent, and the clarity of the Legislature's action on this topic provides compelling reason to depart from our general practice.

Turning to the facts of this case, it is clear the safe harbor provision was not heeded. The Grays' motion seeking sanctions was served and filed on the same day.[4] Nevertheless, the Grays contend that even if we follow *Nutrition Distribution*, there is no basis for reversal. They posit three reasons why.

First, the Grays argue that CPF (and thus Byrne) waived the right to challenge the sanctions award on this procedural ground by failing to contest the imposition of sanctions until after the June 2017 order and, more specifically, by failing to raise the safe harbor provision in the trial court whatsoever. "With respect to the issue of waiver,

---

[4] In their reply brief and at oral argument, CPF and Byrne emphasized that the Grays' request for sanctions was included in their motion to vacate, not in a separate motion. (Former § 128.5(f); see § 128.7(c)(1) ["A motion for sanctions under this section shall be made separately from other motions or requests"]; see also current § 128.5, subd. (f)(1)(A) ["A motion for sanctions under this section shall be made separately from other motions or requests"].) In light of the ground upon which we decide this matter, we do not consider the substance of this argument.

it is true that an appellate court ordinarily will not consider an alleged erroneous ruling where an objection could have been, but was not, raised before the trial court. [Citations.] However, this rule does not apply when the theory raised for the first time on appeal is a pure question of law applied to undisputed facts." (*Martorana*, *supra*, 175 Cal.App.4th at pp. 699–700.) Since "[t]here is no factual dispute that [the Grays] filed and served [their] request for sanctions on the same date," the issue of compliance with the safe harbor provision "presents a pure question of law which may be addressed on appeal." (*Id.* at p. 700; see also *Barnes*, *supra*, 74 Cal.App.4th at p. 130.) Accordingly, we do so here.

The Grays next argue that the safe harbor provision should not apply because no corrective action—as necessary to further the safe harbor provision's purpose—was possible. (See *Nutrition Distribution*, *supra*, 20 Cal.App.5th at p. 130 [holding safe harbor is applicable "when the motion for sanctions [under former section 128.5] was based on a purportedly frivolous complaint, written motion or court filing *that could be withdrawn* or on some other action or tactic *that could be appropriately corrected*" (italics added)]; see also *Li*, *supra*, 177 Cal.App.4th at pp. 593–594.) The Grays maintain that "CPF's frivolous act was not a pending motion that could have been withdrawn or corrected, but an automatic ministerial judgment that was not noticed until after it was entered."

Certainly, the Grays are correct regarding the nature of the judgment entered under the SSMJA. (See § 1710.25; *Aspen International Capital Corp. v. Marsch* (1991) 235 Cal.App.3d 1199, 1203 (*Aspen*) ["Upon simple application in conformance with the Act

11

(§§ 1710.15, 1710.20), entry by the clerk of a judgment based upon the application is mandatory (§ 1710.25), constituting a ministerial act of the clerk and not a judicial act of the court [citations]".) But we question their supposition that no corrective action could be taken. On this topic, we cannot help but find telling the fact that the Grays (via their counsel) explicitly requested corrective action in two letters to CPF's counsel. The first letter demanded, "You now must take immediate action to withdraw CPF's Application and move to vacate the [California Judgment]." The second explicitly "reiterate[d] our demand that you take immediate corrective action."

As far as the precise corrective actions CPF could have taken, we can conceive of several possibilities. Most simply, CPF could have agreed not to oppose the Grays' motion to vacate under section 1710.40, effectively stipulating to vacation of the California Judgment. Alternatively, it could have filed a motion to vacate the California Judgment under section 473, which allows a party to seek relief from a judgment due to mistake, inadvertence, surprise, or excusable neglect. (See also *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 255 [" ' "a party in whose favor a judgment has been rendered is entitled to relief from the judgment as well as the party against whom it is rendered" ' "].) Or perhaps CPF could have moved to correct the clerical error in the California Judgment, insofar as it deviated from the order of the Arizona court. (See *Aspen*, *supra*, 235 Cal.App.3d at pp. 1204–1205.) Point being, this conduct "could [have] be[en] appropriately corrected," and thus application of the safe harbor waiting period would promote its underlying aim. (*Nutrition Distribution*, *supra*, 20 Cal.App.5th at p. 130; see also *Li*, *supra*, 177 Cal.App.4th at pp. 593–594.)

12

Finally, the Grays argue that even assuming the safe harbor provision applies, they "provided sufficient notice" they would seek sanctions. They point to their Arizona counsel's initial letter to CPF's counsel, sent 26 days before the motion was filed. That letter said, "Moreover, given the objectively baseless nature of CPF's actions, the Grays will also seek any and all appropriate sanctions against CPF, including, for example, pursuant to [section] 128.7(c) . . . . " They also note their second letter that reiterated the demand for corrective action.

As we read the Grays' argument, they contend their "substantial compliance" with the safe harbor waiting provision was enough. This position, however, is staunchly foreclosed by a body of case law interpreting section 128.7's safe harbor provision: " 'Application of the doctrine of substantial compliance would be inconsistent with the plain language of the "safe harbor" provision.' " (*Barnes*, *supra*, 74 Cal.App.4th at pp. 135–136, quoting *Cromwell v. Cummings* (1998) 65 Cal.App.4th Supp. 10, 15 (*Cromwell*).) "Strict compliance with the statute's notice provisions serves its remedial purpose and underscores the seriousness of a motion for sanctions." (*Galleria Plus*, *Inc. v. Hanmi Bank* (2009) 179 Cal.App.4th 535, 538 (*Galleria Plus*).) As one court aptly put it, " '[c]lose' is good enough in horseshoes and hand grenades, but not in the context of the sanctions statute." (*Hart v. Avetoom* (2002) 95 Cal.App.4th 410, 414.)

It should thus come as no surprise that "informal notice of an intent to seek sanctions in the future cannot serve as a substitute to the requirements set forth in section 128.7 for a formal noticed motion." (*Barnes*, *supra*, 74 Cal.App.4th at p. 136; see also *Martorana*, *supra*, 175 Cal.App.4th at p. 700 ["A party does not comply with the

13

notice provisions of section 128.7 simply by sending a letter of its intent to seek sanctions to the offending party"].)  Rather, "[u]nder section 128.7, the papers to be served on the opposing party as notice of intent to file a section 128.7 sanctions motion must be the same papers that are ultimately filed with the court no less than 21 days later."  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 827; see also *Galleria Plus*, *supra*, 179 Cal.App.4th at p. 538 ["Section 128.7's incorporation of section 1010 is compulsory, not permissive"].)  That certainly did not happen here.  And the letters do nothing to save the Grays from their noncompliance, given that "[c]orrespondence to opposing counsel which threatens sanctions of an unknown nature at an unspecified time against unidentified persons, and which lacks citation to controlling authority, does not fulfill these statutory purposes."  (*Cromwell*, *supra*, 65 Cal.App.4th Supp. at p. 15; accord, *Martorana*, at p. 700.)

In sum, we are compelled to reverse in light of the Grays' failure to comply with the safe harbor provision applicable to a sanctions motion under former section 128.5.  In light of our conclusion on this ground, we do not reach the host of other arguments made by the parties in their briefing.

DISPOSITION

The order awarding sanctions is reversed.  Appellants shall recover costs on appeal.

DATO, J.

WE CONCUR:


BENKE, Acting P.J.


GUERRERO, J.